**UNITED STATES of America**

v.

**Larry Lane BATEMAN.**

**Crim. No. 92–62–01–D.**

United States District Court,
D. New Hampshire.

Sept. 23, 1992.

Arnold H. Huftalen, Asst. U.S. Atty., Jeffrey R. Howard, U.S. Atty., Concord, N.H., Bruce Taylor, Sp. Atty., U.S. Dept. of Justice, Child Exploitation & Obscenity Section, Washington, D.C., for plaintiff.

Mark F. Sullivan, Exeter, N.H., for defendant.

## ORDER

FUSTE, District Judge, Sitting by Designation.

We have before us defendant's motion to suppress evidence and statements made by the defendant, Docket Document No. 28. The motion was the object of discussion at the informal status conference held on September 21, 1992. The government was ordered to file a limited response. *See* Government's Response, filed September 22, 1992, Docket Document No. 36.

The motion to suppress is couched on two grounds. First, the defendant claims that the police provided the magistrate who issued the search warrant with no information with regard to the "track record" of the informant. "Not only did the police have no information about the informant's reliability and credibility, they made absolutely no effort whatsoever to provide information to the magistrate...." *Motion*, Docket Document No. 28 at 3. Second, it is alleged that the informant's basis of knowledge, accepting the statements of the informant, is minimal, stale, and remote.

"[T]he affidavit is an amalgam of 'boiler plate' language, stale uncorroborated hearsay, innuendo and speculations." *Motion*, Docket Document No. 28 at 4.

During the status conference discussions, the court inquired whether there would be a need for the court to receive evidence. Both the government and the defendant submitted the motion on paper. The court, after carefully reviewing the record and the materials submitted, including the affidavit in support of probable cause for the search warrant to issue, denies the motion to suppress. The affidavit supports probable cause. The information was not fatally stale. In the alternative, under the totality of circumstances test, *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or the good-faith exception to the exclusionary rule, *United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984), a finding of probable cause is appropriate.

There is no need to repeat the details contained in the affidavit in support of the search warrant that is the object of review. An informant came in contact with Lane Bateman in 1979, while attending high school in the State of New York. By February 1980, the informant participated in a video project that Bateman had proposed, which was to occur outside the school and which resulted in nude filming. The informant maintained contact with Bateman throughout his high-school years in New York. In 1980, Bateman allegedly lost his job at the New York high school and was hired at the Phillips Exeter Academy in New Hampshire. Contact between the informant and Bateman continued through letters and telephone calls over the subsequent years.

Although there is no substitute for reading the affidavit in its full extent and context, the following chronology is important for our analysis:

(1) *September 1988:* The informant writes a letter to the defendant, reporting about his life. Bateman responds with a letter and two videotapes described as child pornography.

(2) *April 1990:* The informant reports he received two large boxes described as "full of videos" from Bateman. These boxes were unexpected and unsolicited by the informant. All the videos contained child pornography.

(3) *April 1990 to April 1991:* During this period, the informant received three or four more shipments which consisted of large albums depicting child pornography. He also received more videotapes containing the same kind of materials. The affidavit states that between April 1990 and April 1991, the informant received from Bateman over 130 videotapes and 31 large albums of child pornography.

(4) *Spring 1990:* Informant reported that during the Spring of 1990, he received a video camera from the defendant with instructions to film himself and others carrying out pornographic acts. The informant made a couple of videotapes of himself and others and sent them to Bateman who, in turn, edited the tapes, kept copies, and returned edited copies to the informant.

(5) *August 1990:* At this time the informant returned the video camera to Bateman, and Bateman sent another video camera to the informant, along with several pieces of video equipment. Informant continued making videos of himself and others involving in sexually-explicit pornographic conduct and sent these tapes to Bateman.

(6) *November 1990:* The informant moved to the State of Ohio. While residing in Ohio, he received Polaroid pictures taken by Bateman of him when he was seventeen years old. In addition, he received a package with a videotape containing pornographic material. The informant recognized a male in the video as a subject he met at Bateman's residence during a visit he made in January 1989. During this visit to New Hampshire, the defendant stated to the informant that the person featured in the video was a former Phillips Exeter Academy student. The informant claims that Bateman told him that he made an edited videotape so that it could not be proven in a court of law.

(7) *January of February 1991:* The informant stated he received a videotape from Bateman containing child pornography. This was the same tape he had received earlier, but the tape was unedited and he could now clearly see who was on the tape. The informant confirms he is positive that this is the same subject introduced to him in 1989, but that in the videotape he is much younger in appearance.

(8) *April 1991:* Bateman sends another package to the informant. The informant reports that he did not open the package and returned it to Bateman, claiming his desire to put an end to their communications.

(9) *September 1991:* A telephone conversation between Bateman and the informant takes place. The informant expresses his unwillingness to talk to Bateman and hangs up the phone. Bateman calls back and leaves a message in informant's answering machine. No further contact occurs between these two individuals.

Almost seven months went by and, in April 1992, the Exeter Police Department received information from the Rockingham County Attorney identifying Lane Bateman, of Exeter, New Hampshire, as suspected of violating federal and state laws dealing with child pornography. The following chronology is also important:

(1) *April 1992:* The county attorney expresses that the informant was available for interview. Arrangements were made to grant him immunity in both New Hampshire and Ohio. The informant was also granted immunity for any federal prosecution by the U.S. Attorney in the District of New Hampshire.

(2) *July 3, 1992:* An Exeter police officer interviewed the informant in New Hampshire. On that occasion, the in-

formant gave the preceding information about his relationship with Lane Bateman which covered the period 1979 up to September 1991.

(3) *July 16, 1992:* Detective James F. McLaughlin, Keene Police Department; Detective Richard Kane, Exeter Police Department, and U.S. Postal Inspector William Ricker, subscribed the affidavit in support of the search warrant. The defendant's home was searched, the particular materials sought were found, and the defendant was placed under arrest.

■■■ Our reading of the affidavit leads us to conclude that a neutral magistrate had before him an affidavit with facts alleged constituting probable cause to search for violations of both federal and New Hampshire child pornography laws. The affidavit is replete with details about the expertise and knowledge of the agents subscribing the same in the field of law enforcement as it relates to child pornography and their well-founded suspicions regarding Bateman. The affidavit outlines the modus operandi of adults, often referred to as pedophiles, who sexually and emotionally prefer minors, and the methods they use to create and retain child pornography material. It is evident that the prohibited materials are vulnerable and capable of being hidden, relocated or destroyed. The affidavit also contains detailed explanations about the informant's knowledge of Mr. Bateman's activities in child pornography up to September 1991.

The fact that the history of the videotapes goes back fifteen years or the fact that almost seven months elapsed between the informant's last contact with Bateman in September 1991 and the date the investigation was opened by New Hampshire police authorities in April 1992 has, in our estimation, no serious consequence on the validity of the search warrant. The fact that the New Hampshire police authorities took three months to investigate the case and thereafter had a search warrant issued and executed does not affect the validity of the search made here. Under the "totality of circumstances" test announced in *Illi-*nois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983), and the good-faith exception adopted in *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984), the procurement and execution of the search warrant was on an objective, good-faith basis.

We cannot accept that the information to support probable cause was stale. Time factors must be seen in the context of a specific case and, here, the nature of the principle under investigation (a suspected pedophile), the unique nature of the object of the warrant (child pornography), the unique nature of the creation, storage, keeping, alteration, potential of destruction of the child pornography material, and the recognized interest which the states and the federal government have in drying up the distribution network for child pornography and controlling production itself, are legitimate factors which militate against finding staleness. *See New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); S.Rep. No. 438, 95th Cong., 2nd Sess., *reprinted in* 1978 U.S.C.C.A.N. 40; H.R.Rep. No. 536, 98th Cong.2nd Sess., *reprinted in* 1984 U.S.C.C.A.N. 492.

■■■ Whether the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case. *United States v. DiMuro,* 540 F.2d 503, 516 (1st Cir.1976). Whether probable cause to search precisely exists cannot be "resolved by references to particular formulas or simple rules." *United States v. McCall,* 740 F.2d 1331, 1336 (4th Cir.1984). "The vitality of probable cause cannot be quantified simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *Id.* (quoting *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972)). For purposes of determining whether the information on which the search warrant was based was "stale", courts must look to all the facts and circumstances of the case, including the nature of the criminal activity under investigation, the length of time during which the criminal activity is alleged to

have occurred, and the nature of the property to be seized. *United States v. Dauphinee,* 538 F.2d 1, 5 (1st Cir.1976); *United States v. McCall,* 740 F.2d at 1336. "It is essential to remember that in problems of staleness a mechanical count of days is of little assistance in [the] determination.... As in other issues regarding the existence or absence of probable cause, common sense and reasonableness must prevail, and the magistrate's judgment based upon the facts before him must be given considerable deference in the absence of arbitrariness." *United States v. Freeman,* 685 F.2d 942, 951 (5th Cir.1982) (citation omitted).

Here, no showing has been made that allows us to conclude that the information was impermissibly stale. The motion to suppress evidence and statements is DENIED.

IT IS SO ORDERED.