214 P.3d 168 (2009)
STATE of Washington, Respondent,
v.
Christopher J. GARBACCIO, Appellant.
No. 62161-1-I.
Court of Appeals of Washington, Division 1.
August 24, 2009.
*170 David Allen, Allen Hansen & Maybrown PS, Seattle, WA, for Appellant.
Dennis John McCurdy, King County Prosecutor's Office, Seattle, WA, for Respondent.
DWYER, A.C.J.
¶ 1 Christopher Garbaccio appeals from his conviction for possession of depictions of minors engaged in sexually explicit conduct, in violation of RCW 9.68A.070.[1] Garbaccio contends that law enforcement authorities lacked probable cause to authorize the issuance of the warrant permitting the search of his home for computer hardware containing computer files of child pornography. However, the affidavit in support of the warrant application set forth facts indicating that evidence of possession of child pornography would likely be found on Garbaccio's home computer, thus establishing probable cause. Garbaccio also contends that the trial court erred in instructing the jury and further, that insufficient evidence was introduced at trial to sustain his conviction. Finding no error in the trial court's jury instructions and that sufficient evidence was introduced at trial to sustain Garbaccio's conviction, we affirm.

I
¶ 2 In late May 2006, after a two-week-long investigation, Seattle Police Department Detective Trent Bergmann determined that at least one known video of child pornography had been publicly available earlier that *171 month for download from the Internet Protocol (IP) address assigned to Christopher Garbaccio's home computer.[2] In all, Detective Bergmann located 195 computer files with titles indicative of pornographic themes available for download from Garbaccio's computer. Of these files, 22 had titles strongly suggestive of pornographic content involving minors.
¶ 3 Five months later, on October 31, 2006, Detective Bergmann obtained a warrant to search Garbaccio's residence and to seize various computer hardware and software and other evidence of the crime of possession of child pornography. In the affidavit in support of the warrant application, Detective Bergmann attested that a video file that he had previously identified as depicting minors engaged in sexually explicit conduct, along with 21 other files with titles indicating child pornographic content, had been publicly available on May 3 for download from Garbaccio's computer. Anticipating that the judge reviewing the application might have questions concerning the possible staleness of the previously gathered evidence in light of the five-month time lag between the initial investigation and the warrant application, Detective Bergmann declared that, even if the files that had been available for download in early May could no longer be obtained from Garbaccio's computer, evidence that Garbaccio once possessed the contraband could still be obtained from the metadata of these files stored on the computer hardware. He further declared that, based on the "very large list of images that were titled as being child pornography" and available for download, he believed Garbaccio to be a collector of child pornography and that, based on his training and experience, he believed Garbaccio had therefore likely retained possession of these images. Clerk's Papers (CP) at 32.
¶ 4 On November 1, members of the ICAC task force executed the warrant to search Garbaccio's house. Law enforcement officials seized multiple items of computer hardware located therein. Although Garbaccio was not present when the authorities arrived at his residence, he arrived home from work during the search. Detective Bergmann then interviewed him, while Special Agent Brian Bujdeso of the United States Bureau of Immigration and Customs Enforcement took notes of the conversation. At the end of the interview, Detective Bergmann wrote a statement memorializing the interview for Garbaccio to sign. The statement included the admission that Garbaccio had downloaded child pornography ten times in the past year but had not kept the files, instead deleting them. Garbaccio refused to sign this statement.
¶ 5 Seattle Police Detective Timothy Luckie, a forensic computer analyst with ICAC, later examined the computer hardware seized from Garbaccio's home. He could not find any files containing viewable images of child pornography on the seized equipment. By examining the metadata of deleted files, however, he was able to determine that, at some point, the known video file that had initially raised Detective Bergmann's suspicion and the other 21 files with titles strongly suggestive of child pornography listed in the warrant application affidavit had been stored on Garbaccio's computer. Garbaccio was subsequently charged by information with one count of possessing depictions of minors engaged in sexually explicit conduct.
¶ 6 At trial, much of the testimony focused on precisely what Garbaccio had said to Detective Bergmann and Agent Bujdeso during their interview of him. The State's witnesses and Garbaccio agreed on several points. First, they agreed that Garbaccio admitted to having used the peer-to-peer file sharing software LimeWire to download pornographic photographs and videos from the Gnutella network to his home computer. They further agreed that Garbaccio explained during the interview that he had downloaded pornography in the hope of achieving the physical sense of sexual stimulation, which he had *172 lost after becoming paralyzed from his upper torso down in 1997 as the result of a severe illness. Additionally, they were in accord that Garbaccio stated that he was familiar with the meaning of certain Internet search terms that could be used to locate child pornography, such as "Lolita." Finally, they agreed that Garbaccio had admitted to downloading and then deleting files that contained still images or videos of child pornography.
¶ 7 The witnesses sharply disputed, however, whether Garbaccio admitted to intentionally downloading child pornography. According to Detective Bergmann's testimony, Garbaccio admitted multiple times during the interview that he had deliberately downloaded child pornography after searching for publicly available files using the search terms that they had discussed. Detective Bergmann further testified that Garbaccio refused to sign the written statement memorializing the interview, even though Garbaccio had verbally confirmed the statement's accuracy. Agent Bujdeso's testimony was consistent with that of Detective Bergmann. Moreover, both Detective Bergmann and Agent Bujdeso testified that, in their respective opinions, Garbaccio could not have been confused as to whether the interview concerned the suspicion that he had intentionally downloaded child pornography, even though the interview also included mention of Garbaccio's downloading of adult pornography.
¶ 8 In contrast, Garbaccio testified that he never intentionally downloaded images of child pornography and, further, that he had not confessed to Detective Bergmann to having done so. According to Garbaccio's testimony, Detective Bergmann interchangeably used the terms adult pornography, child pornography, and pornography during the interview in a manner that allowed Detective Bergmann and Agent Bujdeso to misinterpret Garbaccio's statements. Garbaccio testified that he had developed an obsession with pornography after becoming paralyzed but that he was interested only in pornography depicting images of adults and, moreover, that he had explained this to Detective Bergmann.
¶ 9 Garbaccio also testified to telling Detective Bergmann that he would download large "batches" of files containing pornographic images without carefully examining the titles of the files. He admitted at trial to having downloaded some files containing child pornography, while stating that he had done so inadvertently and that he had immediately deleted such files from his computer upon realizing the nature of their content. Garbaccio asserted that he had explained this to Detective Bergmann during the interview. In addition, Garbaccio denied ever having used search terms likely to yield images of child pornography or ever having intentionally searched for child pornography. He testified that he was familiar with such search terms because he had read about them on Wikipedia.[3] However, he maintained throughout his testimony that he had never intentionally sought to obtain images of child pornography and that he had not admitted in his interview with Detective Bergmann to having done so.
¶ 10 Garbaccio and the State entered into a stipulation that Garbaccio had in fact downloaded images of child pornography. In instructing the jury, the trial court relied on the Washington criminal pattern jury instructions.[4] The trial court also instructed *173 the jury that "[i]t is not a crime for an adult to possess, share or download photographs, movies or depictions of persons over 18 years of age engaged in sexually explicit conduct, as these terms are used in these instructions." CP at 122. However, the trial court declined to give the following jury instruction proposed by Garbaccio on the element of knowledge:
If you find that a person downloads files without knowing their content, but subsequently deletes these files, and as soon as that person discovers the files contain images or videos of minors engaged in sexually explicit conduct, then you shall find that the person did not act knowingly.
III Report of Proceedings (RP) at 443.
¶ 11 The trial court also refused to give Garbaccio's proposed instruction that the State must prove that he knew he was downloading files containing child pornography at the time of download. Additionally, the trial court denied Garbaccio's motion to strike the pattern instruction that it would be permissible for the jury to infer knowledge if it found that Garbaccio had "information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime." CP at 116. Garbaccio neither proposed an instruction on the definition of possession nor proposed an instruction on the affirmative defense of unwitting possession.[5] The jury subsequently convicted Garbaccio as charged.

II
¶ 12 Garbaccio first contends that the police lacked probable cause to authorize the issuance of the search warrant because the evidence that Detective Bergmann had initially gathered in May 2006 had become stale by the time he applied for the warrant approximately five months later. We disagree.
¶ 13 In determining the validity of a search warrant, we consider "whether the affidavit on its face contained sufficient facts for a *174 finding of probable cause." State v. Perez, 92 Wash.App. 1, 4, 963 P.2d 881 (1998) (citing State v. O'Neil, 74 Wash.App. 820, 824, 879 P.2d 950 (1994)). "Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." State v. Maddox, 152 Wash.2d 499, 505, 98 P.3d 1199 (2004) (citing State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999)). "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The [issuing judge] is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." Maddox, 152 Wash.2d at 505, 98 P.3d 1199 (citing In re Pers. Restraint of Yim, 139 Wash.2d 581, 596, 989 P.2d 512 (1999)). We review the issuing judge's determination of probable cause for abuse of discretion, Maddox, 152 Wash.2d at 509, 98 P.3d 1199 (citing State v. Clark, 143 Wash.2d 731, 748, 24 P.3d 1006 (2001)), resolving all doubts in favor of the warrant's validity. Maddox, 152 Wash.2d at 509, 98 P.3d 1199 (citing State v. Kalakosky, 121 Wash.2d 525, 531, 852 P.2d 1064 (1993)).
¶ 14 In some situations, the evidence relied upon in support of a warrant application may become stale so that probable cause no longer exists. State v. Smith, 60 Wash.App. 592, 602, 805 P.2d 256 (1991). As explained in Smith, one factor to consider in assessing whether evidence is stale is the number of days intervening between the date on which the evidence was gathered and the date on which the warrant was issued. 60 Wash.App. at 602, 805 P.2d 256 (citing State v. Higby, 26 Wash.App. 457, 460, 613 P.2d 1192 (1980)). The passage of time, however, is "not controlling." Smith, 60 Wash.App. at 602, 805 P.2d 256 (citing Higby, 26 Wash. App. at 460, 613 P.2d 1192). "Other factors to be considered include the nature of the crime, the nature of the criminal, the character of the evidence to be seized, and the nature of the place to be searched." Smith, 60 Wash.App. at 602, 805 P.2d 256 (citing Higby, 26 Wash.App. at 460, 613 P.2d 1192; 2 W. LAFAVE, SEARCH AND SEIZURE, § 3.7(a) at 77 (2d ed.1987)). Further, an appellate court "looks at the information available to the issuing judge." State v. Anderson, 105 Wash.App. 223, 229, 19 P.3d 1094 (2001) (citing State v. Murray, 110 Wash.2d 706, 709-10, 757 P.2d 487 (1988)). "Facts arising later are immaterial unless they were reasonably inferable at the time the warrant issued." Anderson, 105 Wash.App. at 229, 19 P.3d 1094 (citing State v. Goble, 88 Wash.App. 503, 508, 945 P.2d 263 (1997)).
¶ 15 In this case, it was reasonable for the issuing judge to infer that, based on Detective Bergmann's supporting affidavit, Garbaccio was probably involved in criminal activity and that evidence of the crime of possession of child pornography would likely be found at his residence. The affidavit established that Detective Bergmann had located a known video of child pornography publicly available for download from the IP address assigned to Garbaccio. The titles of 21 other files available for download strongly suggested that Garbaccio collected and was in possession of child pornography. That Detective Bergmann waited five months to apply for a search warrant after he initially investigated Garbaccio's computer use did not eliminate the probative value of this evidence at the time the application was made. Detective Bergmann stated in his affidavit that, based on his training and experience, collectors of child pornography often retain the contraband. Although Detective Bergmann employed boilerplate language in making this statement, the statement provided a sufficient basis for the issuing judge to infer that Garbaccio likely still possessed the images, even five months after Detective Bergmann initiated the investigation. See, e.g., United States v. Lacy, 119 F.3d 742, 746 (9th Cir.1997) (holding that similar statements in a warrant affidavit "provided `good reason[]' to believe the computerized visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later") (alteration in original). More importantly, as Detective Bergmann declared in the affidavit, evidence of Garbaccio's possession of contraband, in the form of metadata, would likely be found on his computer *175 hardware, even if the contraband itself could no longer be viewed on his computer.
¶ 16 Garbaccio's discussion of narcotics cases in which courts found that evidence relied upon in support of warrant applications had become stale is not particularly helpful. The nature of drugs and pornography differ. Digital images may be saved for extended periods of time and viewed or copied multiple times without changing their inherent properties. On the contrary, drugs are usually consumed or distributed within a relatively short period of time. Moreover, the five-month delay at issuewhich itself is not the controlling factor for determining whether evidence has become stalewas well within the timeframe recognized by numerous courts as being a reasonable period of prewarrant application delay in the investigation of suspected possession of child pornography. See, e.g., United States v. Irving, 452 F.3d 110, 125 (2d Cir.2005) (23 months); United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir.1993) (2 to 15 months); United States v. Ramsburg, 114 Fed.Appx. 78, 82 (4th Cir. 2004) (longer than 2 years); United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir.2002) (3 months); United States v. Hay, 231 F.3d 630, 636 (9th Cir.2000) (6 months); Lacy, 119 F.3d at 746 (10 months); United States v. Miller, 450 F.Supp.2d 1321, 1334-35 (M.D.Fla.2006) (4 months); United States v. Sherr, 400 F.Supp.2d 843, 846-47 (D.Md. 2005) (8 months); United States v. Albert, 195 F.Supp.2d 267, 276-78 (D.Mass.2002) (6 months); United States v. Bateman, 805 F.Supp. 1041, 1044-45 (D.N.H.1992) (7 months); United States v. Lamb, 945 F.Supp. 441, 459-61 (N.D.N.Y.1996) (5 months); Commonwealth v. Gomolekoff, 910 A.2d 710, 712-15 (Pa.Super.2006) (longer than 9 months); State v. Gralinski, 306 Wis.2d 101, 118-23, 743 N.W.2d 448 (2007) (longer than 2 years).
¶ 17 The supporting affidavit documented Detective Bergmann's discovery of criminal activity. He applied for a search warrant within a reasonable time period in light of the nature of the offense and of the contraband sought to be seized. The issuing judge properly found the existence of probable cause. There was no error.

III
¶ 18 Garbaccio next contends that the search warrant was invalid because Detective Bergmann incorrectly stated in his supporting affidavit that Garbaccio was intentionally sharing computer files containing images of child pornography with other users of LimeWire and Gnutella. At trial, the State's forensic computer expert, Detective Luckie, testified that the version of LimeWire recovered from Garbaccio's computer made the contraband files available for public download by default. Therefore, Garbaccio asserts, any statement in the affidavit that he intentionally shared contraband files must be stricken pursuant to Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This claim is unavailing.
¶ 19 Although Garbaccio acknowledges in his briefing that he was aware of this issue at trial, he cites to nothing in the record indicating that he raised this issue before the trial court. Garbaccio notes in his briefing that, in his suppression motion submitted to the trial court, he argued that Detective Bergmann's warrant application affidavit was deficient under Franks because Detective Bergmann did not also state therein that numerous other files with titles suggestive of adult pornography were available for download from Garbaccio's computer, along with the files with names indicative of child pornography. However, this is not the argument that Garbaccio seeks to advance on appeal. Because Garbaccio's present contention was not raised in his suppression motion, and because he did not seek a ruling on this issue from the trial court, we will not consider it for the first time on appeal.[6] *176 RAP 2.5(a); State v. Mierz, 127 Wash.2d 460, 468, 901 P.2d 286 (1995); State v. Baxter, 68 Wash.2d 416, 422-23, 413 P.2d 638 (1966).

IV
¶ 20 Garbaccio next contends that, for various reasons, the trial court erred in instructing the jury. His claims are unavailing.
¶ 21 Garbaccio's principal claim of error regarding the jury instructions is that they prevented him from arguing his theory of the case. This is so, he avers, because the instructions given required the jury to convict him, even if the jurors believed his testimony that he inadvertently downloaded computer files containing child pornography and that he immediately deleted such files upon learning of their content. Garbaccio argues that the instructions given required the jury to convict him because all of the elements of the offense charged, as set forth in the instructions, were satisfied by proof that he gained knowledge of the improper content of the files stored on his computer, even though he never intended to acquire such material, and even if he immediately deleted the files. Thus, he argues, the instructions given wrongly transformed the charged offense into a strict liability crime and, in essence, directed a verdict against him.
¶ 22 We review de novo alleged errors of law in jury instructions. State v. Barnes, 153 Wash.2d 378, 382, 103 P.3d 1219 (2005). Due process requires that a criminal defendant be convicted only when every element of the charged crime is proved beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 22; Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002). "Accordingly, a trial court errs by failing to accurately instruct the jury as to each element of a charged crime if an instruction relieves the State of its burden of proving every essential element of the crime beyond a reasonable doubt." State v. Williams, 136 Wash.App. 486, 493, 150 P.3d 111 (2007) (citing State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997); State v. Stewart, 35 Wash. App. 552, 554-55, 667 P.2d 1139 (1983)). Due process also requires that the jury be fully instructed on the defense theory of the case. State v. Staley, 123 Wash.2d 794, 803, 872 P.2d 502 (1994). Jury instructions are sufficient if they allow the parties to argue their theories of the case and properly inform the jury of the applicable law. Barnes, 153 Wash.2d at 382, 103 P.3d 1219.
¶ 23 With respect to the elements of the offense of possession of child pornography, the applicable version of RCW 9.68A.070 provided that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a Class C felony." Our Supreme Court has observed that this statute included scienter as an element of the offense, thus avoiding First Amendment overbreadth problems. State v. Luther, 157 Wash.2d 63, 71, 134 P.3d 205 (2006) (citing State v. Myers, 133 Wash.2d 26, 34, 941 P.2d 1102 (1997)); see also New York v. Ferber, 458 U.S. 747, 764-65, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (explaining that criminal liability for the distribution of child pornography "may not be imposed without some element of scienter on the part of the defendant") (citing Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959)). As we have previously noted, "[a] natural grammatical reading of [the statute] would apply the scienter requirement to possession, but not to the age of the children depicted." State v. Rosul, 95 Wash.App. 175, 182, 974 P.2d 916 (1999). If read in this manner, however, the statute might be viewed as being facially overbroad because it would allow for the imposition of criminal liability against individuals engaged in otherwise innocent conduct who happen merely to possess contraband (e.g., possession of second-hand computer hardware or a used digital camera containing illicit data files). Rosul, 95 Wash.App. at 182-83, 974 P.2d 916 (discussing United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); Ferber, 458 U.S. 747, 102 S.Ct. 3348). Thus, to avoid this constitutional difficulty, we previously construed RCW 9.68A.070 "as requiring a showing that the defendant was aware not only of possession, but also of the general nature of *177 the material he or she possessed." Rosul, 95 Wash.App. at 185, 974 P.2d 916.[7]
¶ 24 In this regard, RCW 9.68A.070 differs from statutes, such as the Uniform Controlled Substances Act, chapter 69.50 RCW, that make mere possession of contraband unlawful without containing a scienter requirement. See RCW 69.50.401; State v. Bradshaw, 152 Wash.2d 528, 532-35, 98 P.3d 1190 (2004); State v. Cleppe, 96 Wash.2d 373, 380-81, 635 P.2d 435 (1981). Hence, while RCW 9.68A.070 does criminalize the possession of certain items that the legislature has classified as contraband, for criminal liability for possession of child pornography to attach, the State must prove more than mere possession of contraband; it must prove possession with knowledge of the nature of the illegal material. Rosul, 95 Wash.App. at 185, 974 P.2d 916.
¶ 25 As noted above, in instructing the jury on the elements of the charged offense, the trial court relied on pattern jury instructions. It instructed the jury that the State had the burden of proving beyond a reasonable doubt that Garbaccio "knowingly possessed visual or printed matter depicting a minor engaged in sexually explicit conduct" and "[t]hat [he]... knew the person depicted was a minor." CP at 115. Thus, consistent with our ruling in Rosul, the trial court adequately instructed the jury as to the elements of the charged offense.
¶ 26 Nevertheless, Garbaccio asserts that the instructions given did not allow him to argue his theory of the case. We disagree.
¶ 27 Garbaccio's contention stems from his mistaken belief that his defense theory was properly advanced to negate the State's proof on the question of his knowledge, as opposed to the question of his possession. On a charge of possessing contraband, "[t]o meet its burden on the element of possession the State must establish `actual control, not a passing control which is only a momentary handling.'" Staley, 123 Wash.2d at 798, 872 P.2d 502 (quoting State v. Callahan, 77 Wash.2d 27, 29, 459 P.2d 400 (1969)). As previously discussed, pursuant to our construction of RCW 9.68A.070 in Rosul, an individual may be convicted of possession of child pornography only if the State proves possession with knowledge of the nature of the content of the material in the defendant's possession.
¶ 28 Garbaccio's defense theory was that he did not commit the charged offense because he handled material that he knew to contain images of child pornography only momentarily or, as he testified, for only "a second" before he deleted the contraband images from his computer. III RP at 384. This evidencethe amount of time that Garbaccio handled the material with knowledge of its contentis relevant to the issue of whether he exercised sufficient control over the material, once being aware of its illicit nature, for the trier of fact to conclude that he had possessed the contraband.
¶ 29 On this point, Staley is instructive. Staley appealed from his conviction for possession of cocaine claiming that the trial court erred by not instructing the jury that possession that "is fleeting, momentary, temporary or unwitting" is not unlawful. Staley, 123 Wash.2d at 796-97, 872 P.2d 502. Staley had been arrested for driving while under the influence of intoxicants after leaving a nightclub wherein he had given a musical performance. At the time of his arrest, Staley notified police officers that he was in possession of cocaine. He claimed that an unknown individual at the nightclub had slipped into his tip jar a vile of cocaine, of which he became aware only while counting his tips and of which he inadvertently retained possession while rushing to secure his earnings. Staley, 123 Wash.2d at 796-97, 872 P.2d 502.
*178 ¶ 30 Our Supreme Court explained that the duration of a defendant's handling of contraband "may define, in part, the level of control the prosecution must prove to establish possession" and that "it may be proper to further explain `possession' by including language on the theory of passing control when defining possession for the jury." Staley, 123 Wash.2d at 801-02, 872 P.2d 502. The court clarified, however, that "[t]he duration of the handling ... is only one factor to be considered in determining whether control, and therefore possession, has been established." Staley, 123 Wash.2d at 801, 872 P.2d 502. Moreover, in response to Staley's concern that sufficient facts for criminal liability to attach would exist the instant that he discovered that he was handling cocaine a concern that Garbaccio's present argument closely parallelsthe court emphasized that the State must "establish more than a `passing control' to sustain its burden on possession." Staley, 123 Wash.2d at 801 n. 4, 872 P.2d 502 (quoting Callahan, 77 Wash.2d at 29, 459 P.2d 400).
¶ 31 An instruction that the jury herein could have considered the duration of Garbaccio's control in evaluating whether the State had carried its burden on the element of his possession might have aided Garbaccio in persuading the jury to accept his theory of the case. Such an instruction would likely have been appropriate. See Staley, 123 Wash.2d at 802, 872 P.2d 502. However, Garbaccio did not request such an instruction. That the trial court did not, on its own, issue such an enhanced definitional instruction on the element of possession is not a basis for granting Garbaccio appellate relief. Indeed, it is well established that where the trial court's instructions "properly inform the jury of the elements of the charged crime, any error in further defining terms used in the elements is not of constitutional magnitude." State v. Stearns, 119 Wash.2d 247, 250, 830 P.2d 355 (1992) (citing State v. Lord, 117 Wash.2d 829, 880, 822 P.2d 177 (1991); State v. Fowler, 114 Wash.2d 59, 69-70, 785 P.2d 808 (1990); State v. Scott, 110 Wash.2d 682, 689-91, 757 P.2d 492 (1988); State v. Ng, 110 Wash.2d 32, 44-45, 750 P.2d 632 (1988)). Here, the trial court properly instructed the jury on the elements of the offense with which Garbaccio was charged. The trial court was not required to issue an enhanced definitional instruction sua sponte, as such an instruction was not constitutionally required. State v. Pawling, 23 Wash.App. 226, 232-33, 597 P.2d 1367 (1979). Because Garbaccio did not propose an appropriate definitional instruction, he cannot obtain appellate relief based upon its absence. State v. Scott, 93 Wash.2d 7, 14, 604 P.2d 943 (1980).
¶ 32 Moreover, the instructions given did allow Garbaccio to argue that the State had failed to prove the element of possession. The instructions given permitted him to argue that, in light of his claimed ignorance of the content of the unlawful files before studying their titles or viewing them on his computer screen, the amount of time that he handled such files with knowledge of their content was insufficient to establish anything more than passing control. Thus, contrary to Garbaccio's present claim, the instructions given did not require the jury to convict him in the event that the jurors believed his testimony.
¶ 33 Garbaccio's next contention, that the trial court erred by refusing to instruct the jury that it was required to acquit him if it believed his testimony, is similarly without merit. "A defendant in a criminal case is entitled to have the jury fully instructed on the defense theory of the case." Staley, 123 Wash.2d at 803, 872 P.2d 502 (citing State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986)). However, a defendant "is not entitled to an instruction which inaccurately represents the law or for which there is no evidentiary support." Staley, 123 Wash.2d at 803, 872 P.2d 502 (citing State v. Hoffman, 116 Wash.2d 51, 110-11, 804 P.2d 577 (1991)). Again, the proposed instruction read as follows:
If you find that a person downloads files without knowing their content, but subsequently deletes these files, and as soon as that person discovers the files contain images or videos of minors engaged in sexually explicit conduct, then you shall find that the person did not act knowingly.
III RP at 443. This instruction was legally erroneous for several reasons.
*179 ¶ 34 First, the proposed instruction incorrectly stated the law as it conflated the law on the element of knowledgeon which the State bore the burden of proofwith the law on a possible affirmative defense of unwitting possessionon which the defendant had the burden of proof by a preponderance of the evidence.[8] By not correctly assigning burdens of proof, the instruction was legally deficient.
¶ 35 Next, to the extent that the proposed instruction was truly intended to address the element of knowledge, it was erroneous. Garbaccio never testified that he was unaware that he possessed images of people engaged in sexually explicit conduct. Indeed, he admitted that his intention was to do so. Rather, his defense was based on his testimony that, at the time of downloading, he did not know that the people depicted in the images were minors. As to Garbaccio's knowledge of the age of the persons so depicted, RCW 9.68A.110(2) sets forth the relevant legal principle:
[I]t is not a defense that the defendant did not know the age of the child depicted in the visual or printed matter: PROVIDED, That it is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense the defendant was not in possession of any facts on the basis of which he or she should reasonably have known that the person depicted was a minor.
RCW 9.68A.110(2). Garbaccio's proposed instruction was inconsistent with this provision in that it did not assign the burden of proof to him. It was also substantively at variance with the statute. Either legal deficiency justified the trial court's decision not to give the proposed instruction.[9]
¶ 36 The proposed instruction was legally deficient in yet another respect. As argued, Garbaccio's defense was not that he never knew that any of the persons depicted in sexually explicit conduct were minors. Indeed, he admitted that eventually he came to know this. Rather, his defense was that he did not possess the images for a sufficient period of time after gaining this knowledge to justify criminalizing his behavior. In this regard, his defense was, as discussed above, directed to the element of possession, not to the element of knowledge. The proposed instruction erred, however, by stating otherwise.
¶ 37 Lastly, the proposed instruction incorrectly stated the law in one final respect. A brief handling of illegal material that one knows to be contraband only upon such handling is not necessarily innocent conduct. Staley, 123 Wash.2d at 802, 872 P.2d 502. Hence, that a defendant handled material constituting child pornography only briefly does not require a verdict of not guilty as to the charge of possessing such contraband. Whether the extent of the handling, coupled with the requisite knowledge of the material's content, was sufficient to support a finding of actual control is a factor for the jury to consider in determining whether the State has proved the element of possession. Staley, 123 Wash.2d at 802, 872 P.2d 502. Garbaccio's proposed instruction was not consistent with this accepted principle.
¶ 38 For all of these reasons, the trial court did not err by declining to give Garbaccio's proposed instruction.
¶ 39 Garbaccio also contends that he was entitled to have the trial court instruct the jury that the State had to prove that he knew, at the time of downloading, that he was downloading computer files containing images of child pornography. See III RP 443-44. There is, however, no basis for this proposed instruction. RCW 9.68A.070 criminalizes the knowing possession of child pornography, not the knowing acquisition thereof.
¶ 40 Garbaccio's final assignment of error to the trial court's jury instructions concerns the issuance of a permissive inference instruction on the element of knowledge. Utilizing a familiar pattern instruction, the trial court instructed the jury that, if it found "a person has information which *180 would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge." CP at 116. Garbaccio contends that, by so instructing the jury, the trial court denied him due process because the instruction permitted the jury to conclude that he acted knowingly without finding that he had personal, subjective knowledge of the nature of the computer files that he had downloaded. We disagree.
¶ 41 There is no infirmity in the permissive inference instruction given herein. A valid permissive inference instruction is one which "allowsbut does not require the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." County Court of Ulster County v. Allen, 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (citing Barnes v. United States, 412 U.S. 837, 840 n. 3, 93 S.Ct. 2357, 2361-62, 37 L.Ed.2d 380 (1973)). Indeed, a permissive inference instruction violates the due process requirement that the State prove every element beyond a reasonable doubt, "only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational fact-finder to make an erroneous factual determination." Ulster County, 442 U.S. at 157, 99 S.Ct. 2213. In contrast, "[a] mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the `no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." Ulster County, 442 U.S. at 157, 99 S.Ct. 2213.
¶ 42 In State v. Hull, 86 Wash.2d 527, 546 P.2d 912 (1976), our Supreme Court ruled in a related context that a trier of fact could properly infer the element of knowledge without direct evidence that the defendant had actual knowledge. Hull was convicted of the offense of distributing obscene materials, which included a scienter requirement, just as the offense of possession of child pornography does here. The court explained that a "trier of fact may infer knowledge of content [of the contraband material] by the circumstances attending the sale." Hull, 86 Wash.2d at 540, 546 P.2d 912 (citing State v. J-R Distribs., Inc., 82 Wash.2d 584, 512 P.2d 1049 (1973)). Garbaccio cites no authority to the contrary.
¶ 43 The cases to which Garbaccio does cite do not compel rejection of the pattern instruction given here. See Hanna v. Riveland, 87 F.3d 1034 (9th Cir.1996); Schwendeman v. Wallenstein, 971 F.2d 313 (9th Cir. 1992); State v. Randhawa, 133 Wash.2d 67, 941 P.2d 661 (1997). Each of those cases involved prosecutions for vehicular assault or vehicular homicide. Hanna, 87 F.3d at 1035-36; Schwendeman, 971 F.2d at 315; Randhawa, 133 Wash.2d at 70, 941 P.2d 661. The offenses charged in those cases included an element of reckless driving, and the jury in each case was instructed that it could infer the element of recklessness if it found that the defendant had been driving in excess of the speed limit at the time of the incident. Hanna, 87 F.3d at 1036; Schwendeman, 971 F.2d at 315; Randhawa, 133 Wash.2d at 75, 941 P.2d 661. In each case, the permissive inference instruction given was flawed because the evidence in the case did not provide substantial assurance that the fact of reckless driving flowed from the evidence of excessive speed alone. Hanna, 87 F.3d at 1037; Schwendeman, 971 F.2d at 316; Randhawa, 133 Wash.2d at 78, 941 P.2d 661. In this case, however, the permissive inference instruction did not similarly permit the jury to infer knowledge to the exclusion of evidence to the contrary.
¶ 44 Further, the permissive inference instruction given herein does not suffer from the same flaw as that at issue in State v. Shipp, 93 Wash.2d 510, 514-15, 610 P.2d 1322 (1980), a case to which Garbaccio also cites. In Shipp, which involved the charge of knowingly promoting prostitution, the jury was instructed on the definition of knowledge "in the words of the statute." 93 Wash.2d at *181 513, 610 P.2d 1322. That instruction was problematic because it could have been interpreted by the jurors as creating a mandatory presumption or an objective standard for determining a defendant's knowledge, rather than merely a permissive inference. Shipp, 93 Wash.2d at 514-16, 610 P.2d 1322. In this case, however, the trial court did not instruct the jury that it had to find the element of knowledge if it concluded that a reasonable person would have known the nature of the content of the computer files based on the facts available to Garbaccio. Nor did it instruct the jury that it was required to find that Garbaccio had knowledge if it found that a person exercising reasonable care in the same situation would have had knowledge. The instructional evils addressed in Shipp are not herein present.
¶ 45 Since Shipp, the constitutionality of the pattern instruction on knowledge issued herein "has been upheld repeatedly." State v. Leech, 114 Wash.2d 700, 710, 790 P.2d 160 (1990) (citing cases). It was properly utilized in this case. The trial court did not err in instructing the jury.

V
¶ 46 Finally, Garbaccio contends that insufficient evidence was introduced at trial to support his conviction. Once again, we disagree.
¶ 47 Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt. State v. Hosier, 157 Wash.2d 1, 8, 133 P.3d 936 (2006). On appeal, we draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. Hosier, 157 Wash.2d at 8, 133 P.3d 936. "A claim of insufficiency admits the truth of the State's evidence" and all reasonable inferences therefrom. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). We will reverse a conviction for insufficient evidence only when no rational trier of fact could have found that the State proved all of the elements of the crime beyond a reasonable doubt. State v. Smith, 155 Wash.2d 496, 501, 120 P.3d 559 (2005). In evaluating the sufficiency of the evidence, circumstantial evidence is as probative as direct evidence. State v. Goodman, 150 Wash.2d 774, 781, 83 P.3d 410 (2004).
¶ 48 In light of this standard, we conclude that there was sufficient evidence introduced at trial to convict Garbaccio. Garbaccio and the State stipulated that the video file that laid the foundation for the search warrant contained images depicting minors engaged in sexual conduct. Garbaccio conceded at trial that, on occasion, he had downloaded computer files containing child pornography, albeit, he claimed, inadvertently. Law enforcement officials who interviewed Garbaccio, however, testified that Garbaccio confessed to them that he had intentionally downloaded computer files of child pornography on multiple occasions. The jury was entitled to believe the State's evidence and not believe Garbaccio's testimony. There was sufficient evidence introduced to sustain Garbaccio's conviction.
¶ 49 Affirmed.
We concur: LEACH and APPELWICK, JJ.
NOTES
[1] The version of RCW 9.68A.070 applicable to Garbaccio's prosecution provided that "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony." This statute was amended in 2006 to increase the offense level from a class C felony to a class B felony. Laws of 2006, ch. 139, § 3. As the parties do in their briefing, we refer to "visual or printed matter depicting a minor engaged in sexually explicit conduct" as "child pornography."
[2] At the time, Detective Bergmann was assigned to the federal-state interagency Internet Crimes Against Children (ICAC) task force. He was able to determine that a known video of child pornography was available for download from Garbaccio's computer by examining the video file's SHA-1 value, a lengthy alphanumeric code unique to each computer file available for transmission over file-sharing networks, such as Gnutella, which is the network that Garbaccio used in this instance.
[3] Wikipedia is an open content online encyclopedia.
[4] The trial court's instructions pertinent to the issues raised on appeal were as follow:

Instruction No. 5Definition of Charged Offense (11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 49A.03 (3d ed. 2008) (WPIC)):
A person commits the crime of Possession of Depictions of a Minor Engaged in Sexually Explicit Conduct when he knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct.
CP at 114.
Instruction No. 6Elements of Charged Offense (11 WPIC 49A.04):
To convict the defendant of the crime of Possession of Depictions of a Minor Engaged in Sexually Explicit Conduct, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1)That on or about May 3, 2006, the defendant knowingly possessed visual or printed matter depicting a minor engaged in sexually explicit conduct;
(2)That the defendant knew the person depicted was a minor; and
(3)That this act occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
CP at 115.
Instruction No. 7Definition of Knowledge/Knowingly (former 11 WPIC 10.02 (2005); RCW 9A.08.010(1)):
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result which is described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
Acting knowingly or with knowledge also is established if a person acts intentionally.
CP at 116.
[5] Unwitting possession of contraband may be proved in either of two ways:

The defense of "unwitting" possession may be supported by a showing that the defendant did not know he was in possession of the [contraband]. [State v.] Cleppe, [96 Wash.2d 373] at 381, 635 P.2d 435. See e.g., State v. Bailey, 41 Wash.App. 724, 728, 706 P.2d 229 (1985) (trial court properly instructed jury that possession [was] not unlawful if defendant did not know drug was in his or her possession). The defendant may also show that he did not know the nature of the [contraband] he possessed. See State v. Adame, 56 Wash.App. 803, 806, 785 P.2d 1144 (trial court correctly instructed the jury that possession was unwitting if the person did not know that the substance was present or did not know the nature of the substance), review denied, 114 Wash.2d 1030, 793 P.2d 976 (1990). If the defendant affirmatively establishes that "his `possession' was unwitting, then he had no possession for which the law will convict." Cleppe, [96 Wash.2d] at 381, 635 P.2d 435.
State v. Staley, 123 Wash.2d 794, 799, 872 P.2d 502 (1994).
As regards the latter type of unwitting possession, in prosecutions for possession of child pornography the affirmative defense has been codified:
[I]t is not a defense [to the charge of possession of a depiction of a minor engaged in sexually explicit conduct] that the defendant did not know the age of the child depicted in the visual or printed matter: PROVIDED, That it is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense the defendant was not in possession of any facts on the basis of which he or she should reasonably have known that the person depicted was a minor.
RCW 9.68A.110(2).
[6] A review of the record reveals that, midway through Detective Bergmann's testimony, Garbaccio moved for dismissal, arguing that the State's failure to disclose various experiments that Detective Bergmann had run on different versions of LimeWire violated CrR 4.7, which sets forth the disclosure obligations of the parties to a criminal proceeding. See II RP 94-104. The trial court denied this motion, finding that the State had not violated the rules of discovery. See II RP at 103-104. Garbaccio does not contest this ruling on appeal.
[7] In construing 18 U.S.C. § 2252(a)(4)(B), which prohibits the possession of child pornography and is worded similarly to RCW 9.68A.070, federal circuit courts of appeal have also addressed the question of whether the word "knowingly" applies only to the act of possession or whether it also extends to the sexually explicit nature of the material and the age of the individuals depicted therein. They, too, have concluded that the knowledge requirement extends to both the act of possession and the nature of the regulated material. See, e.g., Lacy, 119 F.3d at 747; United States v. Gendron, 18 F.3d 955, 957-58 (1st Cir. 1994).
[8] See footnote 5, supra.
[9] Garbaccio asserts no claim that RCW 9.68A.110(2) suffers from any constitutional deficiency.