# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JOSHUA CUEVAS QUIMPO,

Appellant.

No. 76868-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 4, 2019

LEACH, J. — Joshua Cuevas Quimpo challenges the sufficiency of the evidence supporting his conviction for residential burglary. Because sufficient evidence establishes that he aided as an accomplice in committing the crime, we affirm.

## BACKGROUND[1]

On September 13, 2015, Bonnie Mitchell left for church at 9:30 a.m. and returned home about 11:20 a.m. As she entered her house from the garage, she noticed lights on that she had not left on. She saw a cabinet was open that had previously been closed. Upstairs, she noticed the front door ajar and the slider

---

[1] RAP 10.3(5) requires that a party cite to the record for each factual statement that it makes in its statement of the case section of its brief. Here, the State does not do this. Instead, it cites to a range of pages in the record at the end of each paragraph. Although we consider the State's brief, we note that this is improper.

off her kitchen open. Her laptop was not on the dining room table where she had left it. She noticed items on the back deck that were not hers, including a sewing machine, a small bag with a power drill, and another bag filled with a number of items. She heard the front door slam but did not see anyone in the front or back of her home. She called 911.

That same day, Madison Farrell visited her parents who live near Mitchell. She saw two males and one female out of her parents' living room window walking quickly down the cul-de-sac. She described them as a white male, a petite white female, and a male of "another ethnicity." The person she described as a white male appeared to be testing each car door handle to determine if it was unlocked and was wearing a backpack. Farrell and her father stepped outside, and her father asked them what they were doing. Farrell testified that they "took off faster." Farrell and her father searched for them in her father's car and found them in the backyard of a house. Farrell called 911 to report that three individuals had been checking car doors. She and her father approached Sergeant Kevin Fairchild who was in the area looking for the burglary suspects. They took him to the house of the backyard where they had found them.

Fairchild saw a man's head pop up, whom he described as "an Asian-looking male." The male was seated next to a female. The male, later identified as Quimpo, and the female, later identified as Whitney Paterno, began running. Fairchild testified that Quimpo later told police that he ran because he had a warrant. Fairchild chased them. Another officer took photographs of the area.

Fairchild testified that the photographs show the black gym bag and gray backpack that police found where Quimpo and Paterno were hiding. The photographs also show a black Nike tennis shoe near the garage door of the house where Quimpo and Paterno were hiding. Fairchild found Mitchell's laptop in the backpack.

Fairchild waited for Officer Brandon Gill who is a K-9 officer. Gill explained that his K-9, Quay, tracks a suspect's scent. He testified that while tracking Quimpo, Quay led him to the bags left where Quimpo and Paterno had been hiding. Gill testified,

> Quay was very, very interested in that bag. And by "interested," I mean he was trying to carry it in his mouth, didn't want to leave it. That's an indication to me as a handler that that is chalked [sic] full of what we call enhanced scent, this kind of stress odor, if you will. So I felt very confident that we had an item that was discarded by a burglary suspect.

Quay also found two black Nike tennis shoes. Gill stated that Quay "grabbed hold of a black Nike sneaker and shook it in his mouth pretty emphatically. So again I believed that at that point one of the suspects had essentially run out of his shoe." Quay found Quimpo covered in grass and leaves in a backyard a few houses away. Quimpo was not wearing shoes. Another civilian directed police to the third suspect, later identified as Aleksandr Lezhnyak. Police found him hiding a few houses away. Police found and arrested Paterno four hours later.

Police returned the laptop and some jewelry to Mitchell. On September 15, 2015, Detective Michael Atwood took photographs of Mitchell's house. Atwood testified about these photographs, which showed pry marks around a

window, cuts in the wood frame of the door that someone made with a sharp-edged tool, a broken-off knife tip in an open doorway, and what appeared to be the knife tip's matching handle "on a ladder's edge" below a window. Atwood stated that as part of his investigation, he obtained video surveillance from a nearby Fred Meyer store. Still images from the surveillance video taken about 10:30 a.m. on the day of the incident showed Quimpo, Lezhnyak, and Paterno together. They showed Quimpo wearing black Nike shoes and Lezhnyak and Paterno carrying the backpack and bag, respectively, that police recovered.

The State charged Quimpo with residential burglary. A jury found him guilty as charged. He appeals.

ANALYSIS

Quimpo challenges the sufficiency of the evidence to prove that he was an accomplice to the crime of residential burglary. When reviewing a sufficiency challenge, an appellate court views the evidence in the light most favorable to the State and determines whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[2] Sufficient evidence must support every element of the charged offense.[3] A reviewing court treats circumstantial evidence the same as direct evidence.[4] This court defers to the trier of fact on

---

[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] State v. Alvarez, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).
[4] State v. Garbaccio, 151 Wn. App. 716, 742, 214 P.3d 168 (2009).

issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[5]

To find Quimpo guilty of residential burglary, the State had to prove that he (1) entered or remained unlawfully in a dwelling and (2) intended to commit a crime against a person or property therein.[6] Here, the court instructed the jury that to convict, it needed to specifically find that Quimpo intended to commit a crime of theft.

The trial court also instructed the jury about the State's theory of accomplice liability. Accomplice liability supports a conviction for the crime if the defendant, with knowledge that doing so will promote or facilitate the commission of the crime, either

> (1)  solicits, commands, encourages, or requests another person to commit the crime; or
>
> (2)  aids or agrees to aid another person in planning or committing the crime.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
>
> A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.[7]

---

[5] State v. Mehrabian, 175 Wn. App. 678, 699, 308 P.3d 660 (2013).
[6] RCW 9A.52.025(1).
[7] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 234 (4th ed. 2016).

Accomplice liability allows the jury to reach a conviction by splitting the elements between accomplices.

> A conviction based on split elements may be affirmed "[s]o long as the State proved beyond a reasonable doubt to the satisfaction of all of the jurors that at least one of the participants [had the requisite intent] and at least one but not necessarily that same participant [committed the criminal act]."[8]

Washington's accomplice liability statute[9] requires that the accomplice have actual knowledge that the principal is engaging in the crime charged.

> While the State must prove actual knowledge, it may do so through circumstantial evidence. Thus, Washington's culpability statute provides that a person has actual knowledge when "he or she has information which would lead a reasonable person in the same situation to believe" that he was promoting or facilitating the crime eventually charged. RCW 9A.08.010(1)(b)(ii).[10]

Here, Mitchell called police around 11:20 a.m. to report that her home had been burglarized. Atwood confirmed that marks around a window and door in Mitchell's house showed that someone tried to pry them open. On the day of the incident, Farrell saw Quimpo walking with Lezhnyak who was carrying the backpack containing Mitchell's laptop. And Fairchild found Quimpo hiding next to this backpack. Quimpo ran from police. This act can be considered as evidence that the defendant had "an instinctive or impulsive reaction arising from consciousness of guilt or [made] a deliberate attempt to avoid arrest or prosecution."[11]

---

[8] State v. Walker, 182 Wn.2d 463, 483, 341 P.3d 976 (2015) (alterations in original) (quoting State v. Haack, 88 Wn. App. 423, 429, 958 P.2d 1001 (1997)).
[9] RCW 9A.08.020(3).
[10] State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).
[11] State v. Gellerman, 42 Wn.2d 742, 749, 259 P.2d 371 (1953).

In addition, Gill testified that Quay's interest in the backpack and the abandoned black Nike shoes indicated they had an "enhanced scent" or "stress odor." This means that a burglary suspect likely discarded them. Further, still images from the Fred Meyer surveillance showed Quimpo with Lezhnyak and Paterno about 10:30 a.m. on the day of the incident. These images also showed Quimpo wearing black Nike shoes. And when Quay found Quimpo in the grass clippings, Quimpo was not wearing shoes. Sufficient evidence supports Quimpo's conviction.

## CONCLUSION

We affirm.

_Leach, J._

WE CONCUR:

_Chun, J._          _Andrus, J._