# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71432-5-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MARK LESTER BESOLA and | ) | UNPUBLISHED |
| JEFFREY EDWIN SWENSON, | ) |  |
|  | ) | FILED: May 19, 2014 |
| Appellants. | ) |  |
|  | ) |  |

Cox, J. — Mark Besola and Jeffrey Swenson appeal their judgments and sentences for possession of and dealing in depictions of a minor engaged in sexually explicit conduct. The trial court properly denied their motions to suppress evidence seized during the investigation of the crimes of conviction. The challenged jury instructions were properly given by the trial court. There is no showing that the trial court made any comment on the evidence. There was sufficient evidence to support the convictions. There was no abuse of discretion by the trial court in the evidentiary decisions challenged on appeal. The crimes of conviction do not involve the same criminal conduct. But the community custody conditions do not fully conform to the law. We affirm the convictions, but remand for resentencing only on the community custody conditions.

In 2009, law enforcement officers were investigating an informant named Kellie Westfall for criminal activity. She agreed to talk to them about Mark Besola and Jeffrey Swenson. Westfall told officers that Besola and Swenson had been in a relationship and lived together in Besola's house for a number of years.

She said that Besola was a veterinarian who would give Swenson controlled substances, and she observed a variety of these substances throughout the house. Westfall also told the officers that she saw child pornography throughout the house.

Based on Westfall's statements, law enforcement officers sought a warrant to seize both controlled substances and child pornography. The judge who issued the original warrant determined that probable cause existed only for the controlled substances.

During the execution of the warrant for controlled substances, officers observed CDs and DVDs with handwritten titles such as "Czech Boy Swap," "Beginner," and "Young Gay Euro." They did not seize these items but instead sought an addendum to the warrant. A different judge authorized the amendment of the warrant to authorize seizure of this additional evidence.

The warrant amendment identified the crime of investigation for the additional evidence as "*Possession of Child Pornography R.C.W. 9.68A.070.*" Moreover, it authorized the seizure of five broad categories of evidence, including "[a]ny and all videotapes, CDs, DVDs," and "any and all computer hard drives or laptop computers and any memory storage devices," as well as other evidence.

Officers executed the warrant amendment and seized a large number of homemade CDs, DVDs, VHS tapes, computers, and other evidence.

The State charged both Besola and Swenson with possession of depictions of minors engaged in sexually explicit conduct and with dealing in these types of depictions.[1] They were tried together as co-defendants.

The jury convicted them as charged. The court sentenced them both to terms of confinement and also imposed a number of community custody conditions.

These appeals followed.

## MOTIONS TO SUPPRESS

Besola and Swenson challenge the validity of the search warrant, as amended. They claim that the trial court erred when it denied their motions to suppress.

They first argue that the search warrant amendment was not sufficiently particular. They next argue that Westfall, the informant who provided the information on which the original search warrant was based, was not credible and could not provide the basis for probable cause required to issue the warrant. Finally, they argue that the officers who obtained the warrant intentionally or recklessly omitted material facts from the supporting affidavit.

We address, in turn, each of these challenges.

---

[1] See RCW 9.68A.050; RCW 9.68A.070.

*Particularity Requirement*

Besola and Swenson argue that the warrant amendment is not sufficiently particular. They contend that the warrant amendment did not describe the items to be seized with particularity given First Amendment protections. They also argue that the warrant amendment did not indicate the specific crime being investigated.

The Fourth Amendment mandates that a search warrant describe with particularity the things to be seized.[2] The purpose of this particularity requirement is "to limit the executing officer's discretion" and "to inform the person subject to the search what items the officer may seize."[3] The degree of specificity required necessarily varies "according to the circumstances and the type of items involved."[4]

We review de novo whether a search warrant contains a sufficiently particularized description to satisfy the Fourth Amendment, but we construe the language "in a commonsense, practical manner, rather than in a hypertechnical sense."[5]

---

[2] State v. Perrone, 119 Wn.2d 538, 545, 834 P.2d 611 (1992) (citing U.S. CONST. amend. 4).

[3] State v. Riley, 121 Wn.2d 22, 29, 846 P.2d 1365 (1993).

[4] State v. Stenson, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997).

[5] Perrone, 119 Wn.2d at 549.

In State v. Perrone, the supreme court considered the First Amendment's effect on the particularity requirement.[6] It explained, "Where a search warrant authorizing a search for materials protected by the First Amendment is concerned, the degree of particularity demanded is greater than in the case where the materials sought are not protected by the First Amendment."[7] In other words, "such warrants must follow the Fourth Amendment's particularity requirement with 'scrupulous exactitude.'"[8]

Here, there does not appear to be any disagreement among the parties before us that a heightened standard of particularity applies to those items listed in the warrant that are protected by the First Amendment. The search warrant amendment stated in relevant part:

### Possession of Child Pornography R.C.W. 9.68A.070

That these felonies were committed by the act, procurement or omission of another and that the following evidence is material to the investigation or prosecution of the above described felony, to-wit:

1. Any and all *video tapes, CDs, DVDs*, or any other *visual* and or audio *recordings*;

2. Any and all printed pornographic materials; . . . .[9]

---

[6] 119 Wn.2d 538, 547-48, 834 P.2d 611 (1992).

[7] Id. at 547.

[8] State v. Reep, 161 Wn.2d 808, 815, 167 P.3d 1156 (2007) (internal quotation marks omitted) (quoting Perrone, 119 Wn.2d at 550).

[9] Ex. 3 (some emphasis added).

The items that the court authorized to be seized in this case—"*video tapes, CDs, DVDs*"—are sufficiently similar to "[b]ooks, films, and the like," that are "*presumptively* protected by the First Amendment where their content is the basis for seizure."[10] And these prosecutions were based, in large part, on seizure of these items.

Thus, the issue is whether the description—"*Possession of Child Pornography R.C.W. 9.68A.070*"—satisfies the heightened standard of particularity required for seized evidence that is presumptively protected by the First Amendment.

In Perrone, the supreme court concluded that the search warrant before it was not sufficiently particular partly because it did not specifically reference the crime under investigation.[11] There, the warrant at issue authorized the seizure of a number of items.[12] After striking portions of the warrant that were not supported by probable cause, it authorized seizure of "[c]hild . . . pornography; photographs, movies, slides, video tapes, magazines . . . of children . . . engaged in sexual activities . . . ."[13] The court concluded that the term "child pornography" was an insufficient reference to the crime being investigated.[14] It gave three reasons for this conclusion.

---

[10] Perrone, 119 Wn.2d at 550.

[11] Id. at 555.

[12] Id. at 543.

[13] Id. at 552.

[14] Id. at 552-55.

6

First, the court stated that "child pornography" is an "'omnibus legal description' and is not defined in the statutes."[15] It stated that this term gives law enforcement too much discretion in deciding what to seize and is not "scrupulous exactitude."[16]

Second, the court explained that a more particular description than "child pornography" was available at the time the warrant was issued.[17] For example, the language in former RCW 9.68A.011 (1989), which defines "sexually explicit conduct" for the statutory chapter involving sexual exploitation of children, could have been used.[18]

Third, the court stated that reference to illegal activity in the form of "child pornography" could not "save" the warrant.[19] The court explained that "so much of the rest of the warrant suffer[ed] from lack of probable cause and from

---

[15] Id. at 553-55.

[16] Id.

[17] Id. at 553-54.

[18] Id. (citing former RCW 9.68A.011 (1989)); see also RCW 9.68A.011(4) ("'Sexually explicit conduct' means actual or simulated: (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals; (b) Penetration of the vagina or rectum by any object; (c) Masturbation; (d) Sadomasochistic abuse; (e) Defecation or urination for the purpose of sexual stimulation of the viewer; (f) Depiction of the genitals or unclothed pubic or rectal areas of any minor, or the unclothed breast of a female minor, for the purpose of sexual stimulation of the viewer. For the purposes of this subsection (4)(f), it is not necessary that the minor know that he or she is participating in the described conduct, or any aspect of it; and (g) Touching of a person's clothed or unclothed genitals, pubic area, buttocks, or breast area for the purpose of sexual stimulation of the viewer.").

[19] Id. at 555.

insufficient particularity."[20] "It is simply too much to believe that a term overly general in itself can provide substantive guidance for the exercise of discretion in executing a warrant otherwise riddled with invalidities."[21]

Here, under Perrone, the "*Child Pornography*" description in the amended warrant is patently insufficient to satisfy the particularity requirement of the constitution. Moreover, the terms of the statute—possession of depictions of a minor engaged in sexually explicit conduct—were available for use at the time of the issuance of the warrant, as the Perrone court suggested.[22] But the more specific terms of the statute were not used in this warrant. For both reasons, this portion of the description fails the particularity requirement that Perrone requires.

Attempting to distinguish this case from Perrone, the State asserts that this warrant contains the statutory citation to "*R.C.W. 9.68A.070*," whereas the warrant in Perrone did not cite the relevant statute. The State further argues that this citation fulfills the particularity requirement that the constitution imposes for evidence presumptively subject to First Amendment protection.

The year after Perrone, the supreme court, in State v. Riley, clarified that when the items to be seized cannot be precisely described at the time the warrant is issued, "generic classifications such as lists are acceptable."[23] But

---

[20] Id.

[21] Id.

[22] Id. at 553-54.

[23] 121 Wn.2d 22, 28, 846 P.2d 1365 (1993).

"[i]n such cases, *the search must be circumscribed by reference to the crime under investigation*; otherwise, the warrant will fail for lack of particularity."[24]

Importantly, Riley did not involve evidence entitled to First Amendment protection.[25] And that case contains little guidance for this case beyond the general statement in the previous paragraph.

The State also relies heavily on State v. Ollivier to support its position.[26] In that case, this court cited Riley when it concluded that a warrant was sufficiently particular in a search for evidence of violation of RCW 9.68A.070.[27] This court reasoned in just a few sentences that the warrant there included a "citation to the statute which Ollivier was accused of violating."[28] There was no further explanation of what the warrant actually stated.

Here, the State asserts that the citation to "*R.C.W. 9.68A.070*" in this search warrant made it sufficiently particular, notwithstanding the patently deficient description, "*Child Pornography*," that precedes this citation.

In our view, neither Riley nor Ollivier provides a clear answer to the question in this case. That is because neither case involved a warrant that

---

[24] Id.; see also State v. Askham, 120 Wn. App. 872, 878, 86 P.3d 1224 (2004) ("The required degree of particularity may be achieved by specifying the suspected crime.").

[25] Riley, 121 Wn.2d at 26.

[26] Brief of Respondent at 37-46 (citing State v. Ollivier, 161 Wn. App. 307, 318-19, 254 P.3d 883 (2011)); see also Report of Proceedings (Feb. 2, 2012) at 27, 38.

[27] Ollivier, 161 Wn. App. at 318-19 (citing Riley, 121 Wn.2d at 28).

[28] Id.

authorized seizure of items presumptively protected by the First Amendment. Riley involved the seizure of "notes, records, lists, ledgers, information stored on hard or floppy discs, personal computers, modems, monitors, speed dialers, touchtone telephones, electronic calculator, electronic notebooks or any electronic recording device."[29] Ollivier involved the seizure of "a red lock box, computers, and the peripheral hardware associated with computers."[30] Thus, none of this evidence in either case implicates the particularity requirement that is to be followed with "'scrupulous exactitude'" under Perrone.[31]

Unlike Riley and Ollivier, as previously discussed, some of the items listed in the amended warrant are presumptively subject to First Amendment protection because they were seized on the basis of their content.

Moreover, neither Riley nor Ollivier clearly answers the question whether the statutory citation, by itself, is a sufficient "reference to the crime under investigation" that circumscribes the generic classifications of items to be seized in this warrant amendment.[32] In Riley, the warrant did not state any crime.[33] In Ollivier, the court stated that there was a citation to the statute in the warrant.[34] But the court did not address if the citation met the particularity requirement for

---

[29] Riley, 121 Wn.2d at 26.

[30] Ollivier, 161 Wn. App. at 318.

[31] Reep, 161 Wn.2d at 815 (quoting Perrone, 119 Wn.2d at 548).

[32] Riley, 121 Wn.2d at 28; Ollivier, 161 Wn. App. at 318-19.

[33] Riley, 121 Wn.2d at 26.

[34] See Ollivier, 161 Wn. App. at 318-19.

seizure of evidence presumptively subject to the protections of the First Amendment.

The parties before us have not provided any relevant briefing on this particularity requirement beyond the cases we already discussed in this opinion. But we note that a number of federal circuit courts have held that reference to a "broad" statute does not fulfill the particularity requirement but reference to a "narrow" statute may be sufficient.

For example, in United States v. Leary, the Tenth Circuit explained that "reference to a broad federal statute is not a sufficient limitation on a search warrant."[35] A "broad federal statute" is one that is "general" in nature,[36] has "exceptional scope,"[37] or covers "a broad range of activity."[38] The Tenth Circuit further noted that "some federal statutes may be narrow enough to meet the fourth amendment's requirement."[39]

Here, it appears that RCW 9.68A.070 is sufficiently narrow to fall within the limits discussed in the previous paragraph to meet the constitutional requirement of particularity. This statute is specific in describing the way that a

---

[35] 846 F.2d 592, 601 (10th Cir. 1988).

[36] See United States v. Cardwell, 680 F.2d 75, 77 (9th Cir. 1982).

[37] See United States v. Spilotro, 800 F.2d 959, 965 (9th Cir. 1986).

[38] Leary, 846 F.2d at 601.

[39] Id.

person may commit this offense: "knowingly possesses a visual or printed matter depicting a minor engaged in sexually explicit conduct."[40]

United States v. Burke is the best guidance that we have discovered in our research to assist us in resolving the particularity issue in this case.[41] That was a prosecution for possession of child pornography under a federal statute.[42] There, the search warrant authorized the seizure of computers, firearms, photos, magazines, and videos or compact discs.[43]

Burke argued that the warrant issued to allow the search of his home did not properly limit the search, violating the Fourth Amendment.[44] The Tenth Circuit concluded that the statutory reference was narrow enough to satisfy the particularity requirement.[45] The court explained, "[T]he charge listed on the warrant is the sexual exploitation of a child followed by a statutory reference, a charge 'narrow enough to meet the fourth amendment's requirement' by bringing to [the] officers' attention the purpose of the search."[46]

The court also indicated that whether the warrant was constitutional was a close question. It stated:

---

[40] RCW 9.68A.070.

[41] 633 F.3d 984, cert. denied, 131 S. Ct. 2130, 179 L. Ed. 2d 919 (2011).

[42] Id. at 987.

[43] Id. at 992.

[44] Id. at 991.

[45] Id. at 992.

[46] Id.

We emphasize that while we find the warrant in this case meets constitutional muster, the government can do better. We are confident an increase in particularity and detail will help avoid appeals like this one. Despite our conclusion on the facts of this case, we encourage law enforcement officers in the future to help the issuing court produce a warrant that obviates the flaws identified in this case.[47]

We conclude that the statutory reference to the crime, "*R.C.W. 9.68A.070*," in this warrant was sufficiently narrow and particular to meet constitutional muster. Riley makes clear that the search authorized by the warrant must be circumscribed by reference to the crime under investigation. But it does not specify how specific that reference must be when the First Amendment presumptively applies. Burke establishes that a statutory citation may be sufficient if the crime under investigation is sufficiently narrow. Based on these cases, we cannot say that this warrant fails to meet these tests.

We note, as the Burke court did, that the government can do better when seeking warrants that implicate First and Fourth Amendment protections. As Perrone makes clear, "*Child Pornography*" is patently insufficient to meet the "scrupulous exactitude" that the constitution requires where evidence is presumptively subject to First Amendment protection.[48] Moreover, a warrant may not meet the particularity requirement if it does not contain a citation to a sufficiently narrow statute to reference the crime under investigation. Thus, like

---

[47] Id. at 993 n.4.

[48] Perrone, 119 Wn.2d at 552-53.

Burke, "we encourage law enforcement officers in the future to help the issuing court produce a warrant that obviates the flaws identified in this case."[49]

The State makes two additional arguments. It argues that "items of apparent evidentiary value may also be seized even though they are not contraband."[50] The State also asserts that even if portions of the warrant are insufficiently particular, the severability doctrine should be applied to save valid parts of the warrant.[51] Given the previous analysis, we need not reach these arguments.

### Informant's Credibility

Besola and Swenson next argue that the trial court erred when it concluded that Westfall was a credible citizen informant and that there was probable cause to issue a search warrant based on her statements. We disagree.

A search warrant may only be issued upon a determination of probable cause.[52] Probable cause is established where there are "facts and circumstances sufficient to establish a reasonable inference that the defendant is

---

[49] Burke, 633 F.3d at 993 n.4.

[50] Brief of Respondent at 46-49 (citing United States v. Banks, 556 F.3d 967, 973 (9th Cir. 2009); United States v. Richards, 659 F.3d 527, 539 (6th Cir. 2011)).

[51] Id. at 49-50.

[52] State v. Fry, 168 Wn.2d 1, 5-6, 228 P.3d 1 (2010) (citing U.S. Const. amend. 4; Wash. Const. art. I, § 7).

involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched."[53]

On appellate review, this court considers the same evidence presented to the judicial officer who issued the warrant.[54] This court reviews de novo the issuing judicial officer's conclusion of law that probable cause is established.[55]

We reject the State's argument that we review for abuse of discretion the issuing judicial officer's legal conclusion that probable cause has been established. Although "[p]rior case law on the standard of appellate review of such probable cause determination is admittedly muddled," the more recent cases have held that de novo review is the applicable standard.[56]

"When a search warrant is based on an informant's tip, the constitutional criteria for determining probable cause is measured by the two-pronged Aguilar-Spinelli test."[57] The two prongs consist of the "'veracity' or the credibility of the informant, and the informant's 'basis of knowledge.'"[58] Here, Besola and Swenson only challenge Westfall's credibility.

---

[53] State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

[54] State v. Chamberlin, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007).

[55] Id.; Ollivier, 178 Wn.2d at 848.

[56] In re Det. of Petersen, 145 Wn.2d 789, 799-800, 42 P.3d 952 (2002).

[57] Chamberlin, 161 Wn.2d at 41 (citing Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)).

[58] State v. Atchley, 142 Wn. App. 147, 161, 173 P.3d 323 (2007) (quoting State v. Jackson, 102 Wn.2d 432, 435, 688 P.2d 136 (1984)).

"The credibility of a confidential informant depends on whether the informant is a private citizen or a professional informant and, if a citizen informant, whether his or her identity is known to the police."[59]

In State v. Chamberlin, the supreme court considered whether an informant was credible.[60] There, the informant, Randall Paxton, was arrested for driving while under the influence, attempting to elude a pursuing police vehicle, and reckless driving.[61] Paxton admitted to being under the influence of methamphetamine and marijuana, and he offered to provide a statement that he got these drugs from Scott Chamberlin.[62] The police told Paxton that they would not make "any deal regarding his criminal charges" if he provided a statement.[63] But Paxton still gave a tape-recorded statement regarding Chamberlin.[64]

The supreme court concluded that Paxton was a reliable citizen informant because Paxton made a statement against his penal interest when he admitted to driving under the influence.[65] Moreover, Paxton revealed his identity. He was willing to "publicly stand by his information."[66] The court explained, "This

---

[59] Id. at 162.

[60] 161 Wn.2d 30, 41-42, 162 P.3d 389 (2007).

[61] Id. at 34.

[62] Id.

[63] Id.

[64] Id.

[65] Id. at 42.

[66] Id.

16

particular set of considerations need not be met in every case, but in this case, these factors are sufficient" to establish the "veracity" or "credibility" prong of the Aguilar-Spinelli test.[67]

Here, the original search warrant affidavit was primarily based on Westfall's statements to law enforcement. Similar to Chamberlin, Westfall was a credible informant who revealed her identity. The affidavit stated that Westfall was willing to testify and have her statements recorded. Additionally, Westfall made statements against her penal interest. The affidavit stated that Westfall was a "methamphetamine user, who both sold to and bought from Mr. Swenson and Mr. Besola." Thus, like Chamberlin, the trial court properly concluded that the "veracity" or "credibility" prong was satisfied and Westfall was a credible informant. Because the basis of her knowledge is unchallenged, the controlling test is satisfied.

Besola and Swenson argue that Westfall was not a credible informant because she "was possibly a participant in the crime under investigation, was implicated in other crimes, and was possibly acting in the hope of gaining leniency." They cite State v. Rodriguez to support this argument.[68]

There, Division Three explained that "suspicious circumstances" surrounding an informant's statement can "greatly diminish[ ] the presumption of

---

[67] Id.

[68] Appellant's Opening Brief at 30 (citing State v. Rodriguez, 53 Wn. App. 571, 769 P.2d 309 (1989)).

17

reliability of the informant[ ]."[69] These "suspicious circumstances" include when an informant is criminally involved or otherwise motivated by self-interest.[70]

Here, the search warrant affidavit stated that she came in contact with law enforcement because she was being investigated for another crime:

> Deputy Tjossen was contacted by Officer Boyle with the Washington State Auto Task Force on March 25, 2009. Officer Boyle was investigating Kellie Westfall in regards to a stolen vehicle. During the contact with Deputy Tjossen and Officer Boyle, Ms. Westfall reported that her friend, Jeffrey Swenson, was obtaining drugs from his roommate, Mark Besola.[71]

The affidavit does not state why Westfall wanted to talk to law enforcement, but the fact that she was being investigated for another crime does raise some suspicions about her veracity or credibility as an informant. But such suspicions do not outweigh her credibility, given several considerations. First, Westfall is not identified as a professional informant who was paid for her statements.[72] Nor does the affidavit state that law enforcement made any promises to Westfall if she cooperated.[73] Second, Westfall provided substantial detail in her statement,

---

[69] Rodriguez, 53 Wn. App. at 576-77.

[70] Id.

[71] Clerk's Papers at 308.

[72] See Atchley, 142 Wn. App. at 162 ("The credibility of a confidential informant depends on whether the informant is a private citizen or a professional informant and, if a citizen informant, whether his or her identity is known to the police.").

[73] See Chamberlin, 161 Wn.2d at 34, 42.

which can outweigh the suspicions.[74] Third, as previously discussed, Westfall made statements against her penal interest.[75] Finally, in Chamberlin, the informant was being investigated for other crimes, but the court still concluded that the informant was reliable.[76] For these reasons, this argument is not persuasive.

Swenson argues that "[t]he idea that a person who makes a statement against penal interest must be telling the truth because they have potentially incriminated themselves, however, ignores important facts."[77] He cites a law review article to point out problems with this idea.[78] But, as previously discussed, the supreme court has considered statements against penal interest in determining whether the "veracity" or "credibility" prong is met.[79] Thus, we follow the supreme court, not the law review article.

---

[74] See State v. Northness, 20 Wn. App. 551, 558, 582 P.2d 546 (1978) ("[T]he fact that an identified eyewitness informant may also be under suspicion —in this case because of her initial contact has been held not to vitiate the inference of reliability raised by the detailed nature of the information and the disclosure of the informant's identity.").

[75] See State v. Lair, 95 Wn.2d 706, 711, 630 P.2d 427 (1981) ("Since one who admits criminal activity to a police officer faces possible prosecution, it is generally held to be a reasonable inference that a statement raising such a possibility is a credible one.").

[76] Chamberlin, 161 Wn.2d at 34, 42.

[77] Opening Brief of Appellant Swenson at 19.

[78] Id. at 19-20 (citing Mary Nicol Bowman, Truth or Consequences: Self-Incriminating Statements and Informant Veracity, 40 N.M. L. REV. 225, 239-40 (2010)).

[79] See Chamberlin, 161 Wn.2d at 42.

19

*Franks* Hearing

Besola and Swenson argue that the trial court erred when it denied their motion for a *Franks* hearing. They allege that the search warrant affidavit omitted material facts. We disagree.

Under *Franks v. Delaware*, a criminal defendant may challenge material misrepresentations in an affidavit supporting a search warrant.[80]

A court begins with the presumption that the affidavit supporting a search warrant is valid.[81] Then, "[a]s a threshold matter, the defendant must first make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'"[82] "Importantly, the *Franks* test for material representations has been extended to material omissions of fact."[83]

Reckless disregard for the truth occurs when the affiant "'in fact entertained serious doubts as to the truth' of facts or statements in the

---

[80] *State v. Cord*, 103 Wn.2d 361, 366-67, 693 P.2d 81 (1985) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *United States v. Martin*, 615 F.2d 318 (5th Cir. 1980); *United States v. Park*, 531 F.2d 754, 758-59 (5th Cir. 1976)).

[81] *Atchley*, 142 Wn. App. at 157.

[82] *Id.* (quoting *Franks*, 438 U.S. at 155-56).

[83] *Id.* at 158.

affidavit."[84] Such "serious doubts" are shown by "'(1) actual deliberation on the part of the affiant, or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'"[85] "Assertions of mere negligence or innocent mistake are insufficient."[86]

"In examining whether an omission rises to the level of a misrepresentation, the proper inquiry is not whether the information tended to negate probable cause or was potentially relevant," but rather, the court must find "the challenged information was necessary to the finding of probable cause."[87]

"If the defendant succeeds in showing a deliberate or reckless omission, then the omitted material is considered part of the affidavit."[88] "'If the affidavit with the matter . . . inserted . . . remains sufficient to support a finding of probable cause, the suppression motion fails and no hearing is required.'"[89]

Here, Besola and Swenson argue that Detective Sergeant Teresa Berg and Deputy R. Vance Tjossem omitted certain material facts from the affidavit for the original search warrant. In its findings of fact and conclusion of law, the trial

---

[84] State v. Clark, 143 Wn.2d 731, 751, 24 P.3d 1006 (2001) (quoting State v. O'Connor, 39 Wn. App. 113, 117, 692 P.2d 208 (1984)).

[85] Id. (quoting O'Connor, 39 Wn. App. at 117).

[86] Atchley, 142 Wn. App. at 157.

[87] Id. at 158.

[88] Id.

[89] Id. (quoting State v. Garrison, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992)).

21

court listed 13 statements that Besola and Swenson claim were recklessly omitted:

> a. Ms. Westfall had been charged in a five-count information with Possession of a Stolen Vehicle, Possession of Methamphetamine, Possession of Another's Identification, DWLS 3, and Obstructing Law Enforcement was filed in Pierce County Superior Court on January 20, 2009;
>
> b. Ms. Westfall's Drug Court Petition was entered on February 5, 2009, and as a condition of her entry into the drug court program, she stipulated that there were facts sufficient to find her guilty of the charged offenses;
>
> c. Ms. Westfall failed to appear for drug court crew on February 25, 2009, and a warrant was issued for her arrest;
>
> d. Ms. Westfall had been booked into the Pierce County Jail on or about March 25, 2009, and a no-bail hold had been ordered March 26, 2009;
>
> e. Ms. Westfall was still incarcerated when she gave her statement to law enforcement on April 9, 2009;
>
> f. Ms. Westfall was subsequently ordered to be released from jail on her personal recognizance on April 13, 2009 and directed to report back to drug court;
>
> g. Ms. Westfall perceived Mr.Besola to be "jealous" of her because she had a close friendship with Jeffrey Swenson, an individual who lived at Mr. Besola's home and had a romantic relationship with Mr. Besola;
>
> h. Ms. Westfall [had] bought drugs [from] Mr. Swenson;
>
> i. Ms. Westfall became friends with Brent Waller, a registered sex offender who lived in an apartment located on the residence when she was in jail the last time, who told Ms. Westfall that she could live with him while she was going through drug court;
>
> j. Ms. Westfall told law enforcement that she was no longer allowed at the house because "[Besola] doesn't like me";
> . . .
> l. The drugs that Ms. Westfall saw in the house were actual pharmaceuticals from Mr. Besola's vet clinic;

22

m. Ms. Westfall never actually read the drug labels on the drugs she claimed to witness Mr. Besola shooting; and

n. The vials of Valium that Ms. Westfall saw in the house were for Mr. Besola's dog, who had cancer.[90]

The trial court then concluded that none of these statements "were omitted from the search warrant affidavit intentionally or with a reckless disregard for the truth."[91] Further, the court determined that "none of the statements listed above were material or necessary to the finding of probable cause."[92]

Besola and Swenson argue that Sergeant Berg and Deputy Tjossem recklessly disregarded the truth because they failed to include information that was readily available. They contend that Westfall's statements previously described were available through the tape-recorded interview. They also assert that her criminal history was available through public records.

In its oral ruling, the trial court stated that some of the alleged omissions involved "nuances of Drug Court." The court stated:

> [Westfall] had not been kicked out of Drug Court, it appears, at the time that this interview took place, but she had been put into Drug Court. To find that law enforcement officers are required to know the nuances of Drug Court and what the stipulation means, as far as whether that falls into the category of a conviction or omission, I think is asking too much of law enforcement. Certainly doesn't rise to the level of any reckless or intentional act to not include the fact she was in Drug Court, what the status was of that.[93]

---

[90] Clerk's Papers at 13-14.

[91] Id. at 13.

[92] Id. at 14.

[93] Report of Proceedings (Oct. 19, 2012) at 30.

But even assuming that some of the omissions were intentional or reckless, the affidavit would have established probable cause even if the omitted information had been included. Much of the information contained in the 13 statements was in the search warrant affidavit in some form.

For example, the affidavit did not state that Westfall was charged with five different crimes and was incarcerated at the time she gave her statement to the law enforcement officers. But the affidavit did state that Deputy Tjossem was investigating her for a crime and told another officer that Westfall was willing to make a statement.[94] Additionally, Besola and Swenson assert that the affidavit did not state that Westfall bought drugs from Swenson. But the affidavit states, "Westfall is a methamphetamine user, who both sold to and bought from Mr. Swenson and Mr. Besola." Further, Besola and Swenson contend that the affidavit did not state that Westfall was no longer able to stay at Besola's house because Besola did not like her. But the affidavit states, "Mr. Besola does not really like Ms. Westfall, but she is allowed into the home, because of Mr. Swenson and the controlled substances. She has stayed overnight at the home several times."

In sum, a Franks hearing was not required. The omitted information was not necessary to the determination of probable cause.

Besola and Swenson argue that the omissions are material because "they bear directly on Westfall's credibility." While this may be true, as previously

_____

[94] Clerk's Papers at 308.

24

discussed, the search warrant affidavit provided sufficient information to allow the trial court to determine whether Westfall was a credible witness. The 13 omitted statements do not change this determination.

Besola and Swenson also assert that the supreme court has "found an affiant reckless in circumstances quite similar to those found here." They cite Turngren v. King County to support this assertion.[95] That case is distinguishable.

Turngren involved a civil action for malicious prosecution, false arrest and false imprisonment, libel, and slander.[96] For the malicious prosecution claim, the court looked at misstatements and omissions in the affidavit in support of the search warrant.[97] The court noted that the affidavit made it seem like an informant voluntarily gave law enforcement information.[98] When "[i]n actuality, the informant's statements, given in response to police questioning about his own criminal activity, could be construed as an effort to exculpate himself and turn police interest away from his own crimes."[99] The court explained that none of this information was presented to the magistrate.[100] The court concluded, "A prima facie want of probable cause, together with the discrepancies between the

---

[95] Appellant's Opening Brief at 35 (citing Turngren v. King County, 104 Wn.2d 293, 705 P.2d 258 (1985)).

[96] Turngren, 104 Wn.2d at 295.

[97] Id. at 305-08.

[98] Id. at 308.

[99] Id.

[100] Id.

informant's track record as set out in the affidavit and in the deposition, permits an inference of malice sufficient to survive summary judgment."[101]

Turngren is distinguishable from this case for two reasons. First, Turngren was analyzing a malicious prosecution claim. Moreover, the search warrant affidavit in this case contained some of Westfall's criminal history, and it explained when Westfall provided a tape-recorded statement to law enforcement. The affidavit stated that Westfall was being investigated for a crime when she decided to talk to law enforcement. Thus, Besola and Swenson's reliance on Turngren is not persuasive.

## JURY INSTRUCTIONS

Besola and Swenson argue that the trial court improperly instructed the jury. Specifically, they contend that RCW 9.68A.070 and RCW 9.68A.050, possession of and dealing in depictions of minors engaged in sexually explicit conduct, require that they knew the persons depicted were minors. They contend that this element was missing from the jury instructions. We disagree.

This court reviews de novo alleged errors of law in jury instructions.[102] "Due process requires that a criminal defendant be convicted only when every element of the charged crime is proved beyond a reasonable doubt."[103] "Jury

---

[101] Id. at 309.

[102] State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

[103] State v. Garbaccio, 151 Wn. App. 716, 732, 214 P.3d 168 (2009) (citing U.S. CONST. amend. XIV; WASH. CONST. art. I, § 22; Jackson v. Virginia, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Brown, 147 Wn.2d 330, 339, 58 P.3d 889 (2002)), review denied, 168 Wn.2d 1027 (2010).

instructions must inform the jury that the State bears the burden of proving each essential element of a criminal offense beyond a reasonable doubt."[104] "It is reversible error to instruct the jury in a manner that would relieve the State of this burden."[105]

As a general rule, "jury instructions are sufficient when, read as a whole, they accurately state the law, do not mislead the jury, and permit each party to argue its theory of the case."[106]

Former RCW 9.68A.070 (2006), the law in effect at the time of the crimes, stated:

> A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class B felony.

Former RCW 9.68A.050 (1989) stated:

A person who:

(1) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct . . . is guilty of a class C felony punishable under chapter 9A.20 RCW.

In State v. Garbaccio, this court analyzed RCW 9.68A.070.[107] It explained that the supreme court had concluded that this statute contained a "scienter

---

[104] State v. Peters, 163 Wn. App. 836, 847, 261 P.3d 199 (2011).

[105] State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).

[106] State v. Teal, 152 Wn.2d 333, 339, 96 P.3d 974 (2004).

[107] 151 Wn. App. 716, 732-34, 214 P.3d 168 (2009), review denied, 168 Wn.2d 1027 (2010).

element," which is "knowingly."[108]  This element is necessary to avoid First

Amendment problems.[109]  This court further stated that in order to avoid

constitutional difficulty, this court had previously construed this statute to require

"'a showing that the defendant was aware not only of possession, but also of the

general nature of the material he or she possessed.'"[110]

In State v. Rosul, this court noted that "'[a] natural grammatical reading of

[the statute] would apply the scienter requirement to possession, but not to the

age of the children depicted."[111]  But if the statute was read in this manner, "the

statute might be viewed as being facially overbroad because it would allow for

the imposition of criminal liability against individuals engaged in otherwise

innocent conduct who happen merely to possess contraband."[112]

Thus, in both cases, this court construed "RCW 9.68A.070 'as requiring a

showing that the defendant was aware not only of possession, but also of the

general nature of the material he or she possessed.'"[113]  Essentially, "the State

---

[108] Id. at 733 (citing State v. Luther, 157 Wn.2d 63, 71, 134 P.3d 205 (2006)).

[109] Id.

[110] Id. (quoting State v. Rosul, 95 Wn. App. 175, 185, 974 P.2d 916 (1999)).

[111] Id. (alterations in original) (quoting Rosul, 95 Wn. App. at 182).

[112] Id.

[113] Id. (quoting Rosul, 95 Wn. App. at 185).

must prove more than mere possession of contraband; *it must prove possession with knowledge of the nature of the illegal material.*"[114]

In Garbaccio, this court concluded that the trial court adequately instructed the jury when it relied on pattern jury instructions for possession of depictions of a minor engaged in sexually explicit conduct.[115] The pattern jury instructions and the instructions in that case read:

> Instruction No. 6—Elements of Charged Offense (11 WPIC 49A.04):
>
> To convict the defendant of the crime of Possession of Depictions of a Minor Engaged in Sexually Explicit Conduct, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about May 3, 2006, the defendant knowingly possessed visual or printed matter depicting a minor engaged in sexually explicit conduct;
>
> (2) *That the defendant knew the person depicted was a minor;* and
>
> (3) That this act occurred in the State of Washington.[116]

The Garbaccio court concluded that "the trial court adequately instructed the jury as to the elements of the charged offense."[117]

---

[114] Id. at 734 (emphasis added).

[115] Id.

[116] Id. at 725 n.4 (emphasis added).

[117] Id. at 734.

In this case, the issue is whether the jury instructions, which do not duplicate the pattern instructions are, nevertheless, adequate. The instructions for RCW 9.68A.070 read:

> To convict defendant BESOLA [AND SWENSON] of the crime of possession of depictions of a minor engaged in sexually explicit conduct, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 21st day of April, 2009, defendant BESOLA [AND SWENSON], or a person to whom he was an accomplice, **knowingly possessed visual or printed matter depicting a minor engaged in sexually explicit conduct**, and
>
> (2) That this act occurred in the State of Washington.[118]

The instructions for RCW 9.68A.050 read:

> To convict defendant BESOLA [AND SWENSON] of the crime of dealing in depictions of a minor engaged in sexually explicit conduct, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That during the period of September 27, 2008 through April 21, 2009, defendant BESOLA [AND SWENSON], or a person to whom he was an accomplice, **knowingly duplicated visual or printed matter depicting a minor engaged in sexually explicit conduct**, and
>
> (2) That this act occurred in the State of Washington.[119]

These instructions, fairly read, inform the jury that the State had to "prove possession with knowledge of the nature of the illegal material."[120] The instructions are stated in a way that "knowingly" modifies "possessed visual or

---

[118] Clerk's Papers at 98-99 (emphasis added).

[119] Id. at 91-92 (emphasis added).

[120] Garbaccio, 151 Wn. App. at 734.

30

printed matter depicting a minor engaged in sexually explicit conduct" for the first crime. Likewise, "knowingly" modifies "duplicated visual or printed matter depicting a minor engaged in sexually explicit conduct" for the second crime.[121] Thus, under Rosul and Garbaccio, these instructions satisfied the scienter element—knowingly. It was not fatal for this court to give instructions that did not duplicate the pattern instructions.

Moreover, the jury instructions permitted the parties to argue their theories of the case.[122] Besola and Swenson were both able to present their defenses, which was to point to their co-defendant and argue that he was the sole offender. A properly instructed jury rejected these defenses. There was no error.

Besola and Swenson argue that, in State v. Luther, the supreme court held that "not only do defendants have to know they are possessing or duplicating pornography, they must also know that the persons depicted are minors."[123] Further, they contend that this element does not appear in the jury instructions.

First, it is not clear that this is what the supreme court held in Luther. The Luther court stated that the "possession of materials depicting actual minors engaged in sexually explicit conduct may be criminalized, provided that the

---

[121] Clerk's Papers at 91-92; see, e.g., State v. Killingsworth, 166 Wn. App. 283, 289, 269 P.3d 1064 ("The 'to convict' instruction required the jury to find that Killingsworth 'knowingly trafficked in stolen property.' The most natural reading of the adverb 'knowingly,' as used in this instruction, is that it modifies the verb phrase 'trafficked in stolen property.'"), review denied, 174 Wn.2d 1007 (2012).

[122] See Teal, 152 Wn.2d at 339.

[123] Appellant's Opening Brief at 22-23 (citing Luther, 157 Wn.2d at 63).

offense includes a scienter element."[124] "RCW 9.68A.070 prohibits only possession of child pornography involving actual minors, and the statute contains a 'knowingly' scienter element."[125]

Second, as previously discussed in this opinion, the jury instructions, fairly read, inform the jury that the State had to "prove possession with knowledge of the nature of the illegal material."[126] Thus, this argument is not persuasive.

## COMMENT ON EVIDENCE

Besola argues that the trial court impermissibly commented on the evidence. We disagree.

Article 4, section 16 of the Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement."[127] "The touchstone of error in a trial court's comment on the evidence is whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury."[128] "The purpose of prohibiting judicial

---

[124] Luther, 157 Wn.2d at 71.

[125] Id.

[126] Garbaccio, 151 Wn. App. at 734.

[127] State v. Lane, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

[128] Id.

comments on the evidence is to prevent the trial judge's opinion from influencing the jury."[129]

If the reviewing court determines the trial judge's remark constitutes a comment on the evidence, the burden is on the State to show that a defendant was not prejudiced based on the record below.[130]

Here, Besola argues that "the judge's comments told the jury that he found Besola's witness to be evasive and frustrating." As the State points out, Besola fails to cite the report of proceedings for any particular statements. Normally, this failure would preclude review.

But we note that in the fact section of Besola's brief he cites a particular exchange during the State's examination of Besola's sister, Amelia Besola. There being no other reference in the briefing than this, we examine this exchange to resolve this issue.

During this examination, Amelia Besola failed to answer the State's questions that only required "yes" or "no" answers:

> MS. SIEVERS [Prosecutor]: Your Honor, I would ask you to direct the witness to answer the question.

> THE COURT: I don't know how to do that, Ms. Sievers. They're very simple questions. Ms. Besola seems to be having trouble answering these simeple [sic] questions.
> Listen to the questions.
> What's the next question, Ms. Sievers?

> MS. SIEVERS: That's fine; I'll move on.

---

[129] Id.

[130] Id.

        THE COURT: I do understand your frustration, Ms.
Sievers.[131]

This comment did not reveal the trial court's feeling as to "the truth value of the

testimony of a witness."[132]  Rather, the trial court's comments were directed to

Amelia Besola not answering the State's questions and the court's statement of

its understanding that counsel was frustrated.  These comments say nothing

about the court's view of the truth of the testimony.  There was no prohibited

comment on this evidence.

        Besola cites a number of cases to support his position that the trial court

made an impermissible comment.  These cases do not change our conclusion.

        First, he cites State v. Eisner[133] and Risley v. Moberg.[134]  These cases

involved judges who questioned witnesses.[135]  Here, the trial court did not

question Amelia Besola.  Thus, these cases are not helpful.

        Second, he cites State v. Lane[136] and State v. Lampshire.[137]  These cases

involved judges who commented on witnesses' credibility.[138]  Here, the trial judge

---

[131] Report of Proceedings (April 18, 2012) at 1059.

[132] Lane, 125 Wn.2d at 838.

[133] 95 Wn.2d 458, 626 P.2d 10 (1981).

[134] 69 Wn.2d 560, 419 P.2d 151 (1966).

[135] Eisner, 95 Wn.2d at 460-63; Risley, 69 Wn.2d at 561-65.

[136] 125 Wn.2d 825, 889 P.2d 929 (1995).

[137] 74 Wn.2d 888, 447 P.2d 727 (1969).

[138] Lane, 125 Wn.2d at 835-39; Lampshire, 74 Wn.2d at 891-93.

did not make any such comment. He commented on the witness not answering the State's questions. Thus, these cases are not helpful.

## SUFFICIENCY OF THE EVIDENCE

Besola argues that there was insufficient evidence to support his convictions. We disagree.

As we previously stated in this opinion, the due process clause of the Fourteenth Amendment of the United States Constitution requires that the State prove every element of a crime beyond a reasonable doubt.[139] To determine whether the evidence is sufficient to sustain a conviction, this court must determine "whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt."[140] A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from the evidence.[141] On issues concerning conflicting testimony, credibility of witnesses, and persuasiveness of the evidence, this court defers to the jury.[142] Circumstantial evidence and direct evidence are considered equally reliable when weighing the sufficiency of the evidence.[143]

---

[139] In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[140] State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).

[141] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[142] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

[143] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

*RCW 9.68A.070*

Besola argues that there was insufficient evidence for the jury to find that he was in actual or constructive possession of depictions of minors engaged in sexually explicit conduct. He is wrong.

As previously noted, former RCW 9.68A.070 (2006) provides, "A person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class B felony."

Chapter 9.68A RCW does not provide a definition for "possession."[144] Possession generally is "actual" or "constructive."[145] Actual possession indicates "physical custody," while constructive possession indicates "dominion and control over an item."[146] "In establishing dominion and control, the reviewing court examines the 'totality of the situation.'"[147] "This control need not be exclusive, but the State must show more than mere proximity."[148]

Here, Brent Waller, who lived in the garage of Besola's house, testified that he saw a substantial amount of pornography in Besola's house. Law enforcement officers seized multiple DVDs with depictions of minors engaged in sexually explicit conduct from his house. Further, a handwriting expert testified

---

[144] See RCW 9.68A.011.

[145] State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

[146] State v. Mobley, 129 Wn. App. 378, 384, 118 P.3d 413 (2005).

[147] Id. (quoting State v. Morgan, 78 Wn. App. 208, 212, 896 P.2d 731 (1995)).

[148] State v. Raleigh, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010).

that some of these DVDs contained handwriting that could be attributed to Besola.

Officers also seized a computer that was registered to "Mark," which is Besola's first name, and it contained personal photographs of Besola and financial documents for his business. The computer also contained files with video clips of minors engaged in sexually explicit conduct.

This evidence was sufficient to establish that Besola had actual or constructive possession of depictions of minors engaged in sexually explicit conduct.

Besola argues that Swenson admitted to possessing and viewing the depictions and Besola denied it. Further, he contends that he had "no motive to possess the items but Swenson did have a motive because he was trading pornography with Brent Waller." While Besola denied possessing or knowing about the videos, this court does not review credibility determinations by the finder of fact.[149]

Besola also contends that this case is similar to State v. Roberts.[150] We disagree.

There, Dirk Roberts was convicted of possession of marijuana with intent to deliver or manufacture.[151] Roberts claimed that the marijuana grow operation

---

[149] See Walton, 64 Wn. App. at 415-16.

[150] Appellant's Opening Brief at 42 (citing State v. Roberts, 80 Wn. App. 342, 355, 908 P.2d 892 (1996)).

[151] Roberts, 80 Wn. App. at 344.

belonged to his subtenant, John Sylvester.[152] The trial court implicitly held that Robert's ability to evict Sylvester showed that Roberts had dominion and control over the grow operation in the basement.[153] This court concluded that the trial court erred when it came to this conclusion.[154] Here, the evidence that Besola possessed the depictions was not based on his ability to evict Swenson. Thus, Roberts is not helpful.

*RCW 9.68A.050*

Besola argues that there was insufficient evidence to prove that he duplicated any depictions of minors engaged in sexually explicit conduct. He is mistaken.

As previously noted, former RCW 9.68A.050 (1989) provides: "A person who . . . [k]nowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct . . . is guilty of a class C felony punishable under chapter 9A.20 RCW."

Here, law enforcement officers seized three computers from Besola's home. The State presented evidence that 40 files were downloaded onto one of the computers that was registered to "Mark" and contained documents connected to Besola, and these files contained depictions of minors engaged in sexually explicit conduct. Moreover, this computer had a device attached to the computer

---

[152] Id.

[153] Id. at 353.

[154] Id. at 354.

that a detective described as a "Systor DVD duplicating device." The computer contained a peer-to-peer file sharing folder that contained two videos of minors engaged in sexually explicit conduct. The State also presented evidence that many of the seized DVDs were duplicates of the same videos.

This evidence was sufficient to prove that Besola duplicated depictions of minors engaged in sexually explicit conduct.

Besola argues that there was no evidence that he was Swenson's accomplice for both charges. He argues that there was no evidence proving that Besola "solicit[ed], command[ed], encourag[ed] or request[ed]" Swenson to commit the crime or "aid[ed] or agree[d] to aid" Swenson in planning or committing the crime.[155] First, the jury did not need to find that Besola was Swenson's accomplice.[156] There was sufficient evidence to find that Besola himself possessed and duplicated the depictions of minors. Second, reasonable inferences can be drawn from the evidence that Besola knew that Swenson was committing these crimes and Besola was aiding him. Thus, this argument is not persuasive.

## CHARACTER EVIDENCE

Swenson argues that the trial court abused its discretion when it admitted evidence that Swenson and his roommate, Waller, traded adult pornography. He

---

[155] Appellant's Opening Brief at 43 (citing RCW 9A.08.020).

[156] See Clerk's Papers at 91-92, 98-99 (explaining in the jury instructions that "defendant BESOLA *or* a person to whom he was an accomplice" knowingly possessed and knowingly duplicated visual or printed matter depicting a minor engaged in sexually explicit conduct) (emphasis added).

39

argues that this character evidence was "irrelevant and highly prejudicial," violating ER 404(b). Because Swenson failed to preserve this challenge by a timely objection, we decline to review it.

Swenson asserts that this testimony was admitted "over defense objection." But he does not cite the record to show where he objected based on ER 404(b) during Waller's testimony. Nor did he submit a reply brief to respond to the State's argument that he did not preserve this issue based on his failure to object at trial. Accordingly, we do not address this issue any further.

## SAME CRIMINAL CONDUCT

Besola and Swenson argue that the trial court erred in calculating their offender score for sentencing purposes. Specifically, they contend that possessing depictions of a minor engaged in sexually explicit conduct and dealing in these depictions involve the same criminal conduct. We disagree.

Under the Sentencing Reform Act of 1981, an offender's sentence range for each conviction is ordinarily calculated by counting "all other current and prior convictions as if they were prior convictions for the purpose of the offender score."[157] The act provides an exception to this general rule if the court finds that some or all of the current offenses encompass the same criminal conduct.[158] Crimes constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same

---

[157] RCW 9.94A.589(1)(a).

[158] Id.

40

victim."[159] Unless all three of these elements are present, the offenses do not constitute the same criminal conduct and must be counted separately in calculating the offender score.[160] "[T]he statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act."[161]

For the first element, "[i]ntent is to be viewed objectively rather than subjectively."[162] The first step is to "'objectively view' each underlying statute and determine whether the required intents, if any, are the same or different for each count."[163] If the intents are different, the offenses are counted as separate crimes.[164] If the intents are the same, the next step is to "'objectively view' the facts usable at sentencing, and determine whether the particular defendant's intent was the same or different with respect to each count."[165] If the intents are the same, then the counts constitute same criminal conduct.[166]

In State v. Hernandez, Division Two considered whether intent to deliver a controlled substance had the same intent as possession of a controlled

---

[159] Id.

[160] State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

[161] Id.

[162] State v. Rodriguez, 61 Wn. App. 812, 816, 812 P.2d 868 (1991).

[163] Id. (quoting State v. Collicott, 112 Wn.2d 399, 405, 771 P.2d 1137 (1989)).

[164] Id.

[165] Id.

[166] Id.

substance.[167] The court explained, "'Objectively viewed, the intent of delivery is to transfer the narcotics from one person to another usually, if not universally, with an expectation of benefit to the person effecting the delivery.'"[168] In contrast, "Objectively viewed, the criminal purpose of simple possession is to have the narcotics available and under the control of the possessor to use as he or she sees fit."[169] The court concluded that the two crimes did not involve the same criminal conduct.[170]

Here, like Hernandez, the intent to knowingly possess depictions of a minor engaged in sexually explicit is different than the intent to knowingly deal in these depictions. In this case, the State alleged that the relevant form of dealing was duplicating the depictions. Objectively viewing the statutes, duplicating these depictions has the intent to transfer them from one person to another. While simple possession allows the possessor to have control over the depictions for himself or herself. Because the intents are different, the trial court did not err when it counted the offenses as separate crimes.[171]

Besola and Swenson argue that the two crimes have the same intent because in order to duplicate the depictions, they argue that a person must

---

[167] 95 Wn. App. 480, 483-86, 976 P.2d 165 (1999).

[168] Id. at 484 (quoting State v. Baldwin, 63 Wn. App. 303, 307, 818 P.2d 1116 (1991)).

[169] Id.

[170] Id. at 485-86.

[171] See id.

possess the depictions. They cite <u>United States v. Davenport</u> to support this assertion.[172] But that case involved a double jeopardy and lesser included offense claim.[173] Thus, that case is not helpful.

## COMMUNITY CUSTODY CONDITIONS

Swenson argues that condition 13 and condition 27 were not statutorily authorized, violated due process, and must be stricken. We conclude that certain conditions are not statutorily authorized and remand for resentencing only for these conditions.

When a court sentences someone to a term of community custody, the Sentencing Reform Act, RCW 9.94A.703(1), requires it to impose certain conditions. This court reviews community custody conditions for abuse of discretion.[174] A court abuses its discretion if the sentence is not authorized by statute.[175] The proper remedy for a condition not authorized by statute is to reverse that portion of the sentence and remand for resentencing of the improper condition.[176]

Under RCW 9.94A.703(3)(f), a court may order an offender to "[c]omply with any crime-related prohibitions." A "crime-related prohibition" is an order that

---

[172] Appellant's Opening Brief at 46; Appellant's Reply Brief at 12-13 (citing <u>United States v. Davenport</u>, 519 F.3d 940 (9th Cir. 2008)).

[173] <u>Davenport</u>, 519 F.3d at 943.

[174] <u>Riley</u>, 121 Wn.2d at 37.

[175] <u>State v. Barnett</u>, 139 Wn.2d 462, 464, 987 P.2d 626 (1999).

[176] <u>State v. Sansone</u>, 127 Wn. App. 630, 643, 111 P.3d 1251 (2005).

prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[177]

Swenson first challenges condition 13: "You shall not possess or consume any mind or mood altering substances, to include alcohol, or any controlled substances *without a valid prescription from a licensed physician.*"[178] Unless waived by the court, RCW 9.94A.703(2)(c) requires the court to order an offender to "[r]efrain from possessing or consuming controlled substances *except pursuant to lawfully issued prescriptions.*"[179] As Swenson argues, a "lawfully issued prescription" is broader than a "valid prescription from a licensed physician." He points to RCW 69.41.030 to show that physician assistants and other health care providers can issue lawful prescriptions and these providers may not necessarily fall within the definition of "licensed physician."[180] Thus, condition 13 is not authorized and should be stricken.

Swenson also challenges condition 27: "Do not possess or peruse any sexually explicit materials in any medium. Your sexual deviancy treatment provider will define sexually explicit material. Do not patronize prostitutes or

---

[177] RCW 9.94A.030(10).

[178] Clerk's Papers at 198 (emphasis added).

[179] (Emphasis added.)

[180] RCW 69.41.030 (listing health care providers such as optometrists, dentists, veterinarians, and nurse practitioners with prescription authority).

establishments that promote the commercialization of sex."[181] He makes three arguments about this condition.

First, Swenson argues that it was improper to allow his sexually deviancy provider to define "sexually explicit material." He cites State v. Sansone to support this argument.[182] There, this court held that the definition of "pornography" was "not an administrative detail that could be properly delegated" to a community corrections officer.[183] But this court limited the decision to the facts of that case, and it observed that "[a] delegation would not necessarily be improper if Sansone were in treatment and the sentencing court had delegated to the therapist to decide what types of materials Sansone could have."[184] Since that is precisely what the trial court in this case has done, we conclude that there was no error.

Second, Swenson argues that this condition is not a crime-related prohibition. He contends that "*any* sexually explicit material" is too broad and can encompass "legal, adult pornography unrelated to the crime" of possessing and dealing in depictions of minors engaged in sexually explicit conduct.[185] Contrary to Swenson's argument, "any sexually explicit materials" is not too

---

[181] Clerk's Papers at 199.

[182] Opening Brief of Appellant Swenson at 24 (citing State v. Sansone, 127 Wn. App. 630, 642, 111 P.3d 1251 (2005)).

[183] Sansone, 127 Wn. App. at 642.

[184] Id. at 643.

[185] (Emphasis added.)

broad. As just discussed, this term only includes those defined by the sexual deviancy treatment provider. Thus, this argument is not persuasive.

Third, Swenson argues that the condition that he not "patronize . . . establishments that promote the commercialization of sex" is too broad and not crime-related. We agree. It is not clear what "establishments that promote the commercialization of sex" means. Further, given this vague term, it is not clear from this record whether there was evidence that such establishments were related to Swenson's crimes. Thus, this part of condition 27 is without authority of law.

We affirm the judgments and sentences except that we reverse the community custody conditions that we discussed in this opinion and remand for resentencing only on these conditions.

_Cox, J._

WE CONCUR: